**CONCERNED PARENTS TO SAVE DREHER PARK CENTER, et al., Plaintiffs,**

v.

**CITY OF WEST PALM BEACH, Defendant.**

No. 93–8532–CIV.

United States District Court, S.D. Florida.

March 1, 1994.

988

James K. Green, James K. Green, P.A., West Palm Beach, FL, for plaintiffs.

Samuel A. Price, Asst. City Atty., City of West Palm Beach, West Palm Beach, FL, for defendant.

### ORDER GRANTING PRELIMINARY INJUNCTION

RYSKAMP, District Judge.

THIS CAUSE came before the Court upon Plaintiffs' Motion for Preliminary Injunction. The Court heard oral arguments on the matter on January 12, 1994.[1]

1. In lieu of live testimonial evidence, the Court considered deposition testimony filed by the parties in deciding this matter.

2. There was some indication that one or more of the named plaintiffs are not residents of the City of West Palm Beach. Although this may affect the standing of these plaintiffs, because there is

## I. Background

Concerned Parents to Save Dreher Park Center is an unincorporated association of over fifty parents and volunteers organized in response to the elimination of certain recreational programs for persons with disabilities, which had previously been provided by the Defendant City of West Palm Beach (the "City"). The other named plaintiffs are individuals with disabilities who had been participating in these programs prior to their elimination, or parents or guardians of such participants.[2]

In 1986 the City conducted a needs assessment to determine the need for leisure services for persons with physical and/or mental disabilities of West Palm Beach. The City determined that West Palm Beach had a significant disabled population in need of such services.[3] As a result, and since that time, the City has made available a variety of recreational and social programs and activities for individuals with disabilities and their families at the Dreher Park Center.

As of the 1992–1993 fiscal year, the City was offering at its Dreher Park Center such programs as Jammin' in the Sun Day Camp (summer day camp services for a variety of children with varying disabilities), Awesome Adventurer Club (club-type program for children with varying disabilities), T.G.I.F. (monthly social program for mentally handicapped adults to develop leisure skills), Good Times Club (monthly social program for visually-impaired and blind adults), Sib Shop (designed as an outlet for children with siblings with disabilities), a lip reading instruction program, the Out and About Club (a quarterly activity program for visually-impaired teens), Leisure Alternatives (leisure activities for mentally handicapped adults), little league baseball for disabled youth, swimming for physically disabled persons, and other regular and occasional programs or activities.

at least one plaintiff who is a resident, for purposes of this motion the standing issue is of no import.

3. Therapeutic Recreation Budget Request (for fiscal year 1986–87), Plaintiff's Exhibit 23 to the Motion for Preliminary Injunction.

During fiscal year 1992–1993 approximately 300 disabled persons participated in the Dreher Park Center programs. Karen Herrick Deposition at 38.

The 1992–1993 budget for the entire Department of Leisure Services was $6,573,-550.[4] Of this amount, the Special Populations section[5] was allotted $384,560 for their budget. Of the $384,560, the Dreher Park Center's share of the budget was $170,694.[6]

In the fall of 1993, as a result of budget constraints the City made various cuts to the 1993–1994 budget, including those for programs in the Department of Leisure Services. The entire budget of the Department of Leisure Services was reduced from $6,573,-550 in Fiscal Year 1992–1993 to $5,919,731 in Fiscal Year 1993–1994. The budget for the Special Population Section was reduced from $384,560 to $82,827. The remaining $82,827 is apparently specifically designated for the salary and benefits for one staff member (a Special Population Supervisor) and for utilities and maintenance of the Howard Park Senior Citizens Center building and liability insurance. Three other positions in the Special Populations section (those for personnel at the Dreher Park Center) were eliminated, as was maintenance for the Dreher Park Center facility. The effective result was that all previously existing programs for the persons with disabilities were completely eliminated.[7]

Plaintiffs instituted this action for injunctive relief in the Court of Fifteenth Judicial Circuit alleging violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* (the "ADA") and Article I, Section 2 of the Florida Constitution.[8] The action was removed from state court and this Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 1441 and the ADA.

## II. *Preliminary Injunction*

■ To prevail in a motion for preliminary injunction, the movant must show: (1) a substantial likelihood that the movant will ultimately prevail on the merits, (2) that the movant will suffer irreparable injury if the injunction is not issued, (3) that the threatened injury to the movant outweighs the potential harm to the opposing party, and (4) that the injunction, if issued, would not be adverse to the public interest. *Haitian Refugee Center, Inc. v. Nelson,* 872 F.2d 1555, 1561–62 (11th Cir.1989).

## A. *Substantial Likelihood of Prevailing on the Merits*

■ The ADA became effective on July 26, 1992, and there is relatively little case law interpreting the reach of the statute. Neither party has directed the Court to any case that applies Title II (relating to public services) of the ADA to city-sponsored recreational programs, nor has this Court been able to locate any cases directly applicable. However, the statute and regulations promulgated thereunder[9] are clear enough to decide this particular case of first impression.

Title II of the ADA provides that

... no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or

---

4. FY94 Proposed Budget/Departmental Summary, Plaintiff's Exhibit 2 to the Motion for Preliminary Injunction. This budget includes a wide range of line items such as athletics and recreational programs for non-disabled persons, as well as a significant allocation for maintenance of parks and municipal facilities.

5. The Special Populations section consisted of programs at Dreher Park Center (for individuals with disabilities) and the Howard Park Senior Citizens Center (for senior citizens).

6. Report of the Task Force on Recreation Services for Special Populations, August 23, 1993, Plaintiff's Exhibit 3 to the Motion for Preliminary Injunction.

7. FY94 Proposed Budget/Departmental Summary.

8. Because the Court finds that preliminary injunction is warranted under the ADA, an analysis of Plaintiffs' claim under the Florida Constitution is unnecessary at this time:

9. Because Congress explicitly authorized the Attorney General to promulgate regulations under the ADA, see 42 U.S.C. § 12134(a), these regulations "must be given legislative and hence controlling weight unless they are arbitrary, capricious, or clearly contrary to the statute." *United States v. Morton,* 467 U.S. 822, 834, 104 S.Ct. 2769, 2776, 81 L.Ed.2d 680 (1984) (citations omitted).

activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

Thus, to show a violation of Title II, a plaintiff must show: (1) that he is, or he represents, the interests of a "qualified individual with a disability"; (2) that such individual was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability.

■ First, there is no dispute that Plaintiffs or those whose interests Plaintiffs represent are "qualified individuals with disabilities." The definition of the term is:

an individual with a disability who, *with or without reasonable modifications to rules, policies, or practices* ... meets the essential eligibility requirements for the receipt of services or the participation in programs or actives provided by a public entity. 28 C.F.R. § 35.104 (emphasis added).

There is no dispute as to the fact that Plaintiffs are individuals with disabilities. However, although Defendant has not raised it, the Court considered the issue of whether Plaintiffs were *qualified* individuals with disabilities. It could be argued that in many recreational/athletic activities a threshold level of physical and mental abilities constitute "essential eligibility requirements" that disabled persons may not meet. As a paradigmatic scenario, it may be the case that there are wheelchair-bound children who cannot meet

the "essential requirements" for a soccer team because they cannot run or cannot kick a ball. However, such an analysis would be persuasive only if the full and entire extent of the City's recreational program was one soccer team. An "essential eligibility requirement" of a *soccer team* may be the ability to run and kick, but the only "essential eligibility requirement" of the City's *recreational program* (which is the sum of a variety of individual recreational, social, and educational activities and programs) is the request for the benefits of such a program. See Appendix A to Part 35 of 28 C.F.R. ("Appendix A") at 448 (7–1–93 Edition). Therefore, the only "essential eligibility requirement" that Plaintiffs must meet is to request the benefits of a recreational program.

■ Further, even if certain physical or mental abilities were considered to be essential eligibility requirements, the same "nonqualifying" disabled individuals may be able to meet such requirements when "reasonable modifications" to the program are made. Thus, if the City's recreational program is not merely one athletic or other activity but rather an entire network of individual activities and services, a creation of a wheelchair soccer team or something of comparable recreational value may be a "reasonable modification" of the City's recreational program.[10] The physical ability requirements for wheelchair soccer, obviously, are different than for non-disabled soccer and may be met by the same disabled persons disqualified for "regular" soccer.[11]

---

**10.** Indeed, the ADA was enacted precisely to remedy the discriminatory effects of overgeneralizations, presumptions, and prejudices about what persons with disabilities can and cannot do. As part of its findings, Congress stated:

... individuals with disabilities are a discrete and insular minority who have been faced with restrictions and limitations, subjected to a history of purposeful unequal treatment, and relegated to a position of political powerlessness in our society, based on characteristics that are beyond the control of such individuals and resulting from stereotypic assumptions not truly indicative of the individual ability of such individuals to participate in, and contribute to, society ... 42 U.S.C. § 12101(a)(7).

Therefore, the mere fact that persons with disabilities may not be able to participate in recreational and leisure activities in exactly the same

manner as those without disabilities does not justify denying access to the City's programs. See also *Galloway v. Superior Court of District of Columbia,* 816 F.Supp. 12 (D.D.C.1993) (categorical exclusion of all blind persons from juries violates the ADA).

**11.** The Court recognizes that such an analysis opens a Pandora's Box of questions as to what are "reasonable modifications" to the City's recreational program. If for some reason a child is unable to play wheelchair soccer, must the City create another "soccer-like" team for those children? Such a question, a thorny one to answer (see Appendix A at 452), is not at issue before the Court and will not be decided here, but the Court does note a couple of important guideposts. First, the ADA does not require that persons with disabilities be given "adequate re-

█ Second, the elimination of the Dreher Park Center programs has the effect of denying persons with disabilities the benefits of the City's recreational programs. The City emphasizes that none of the City's recreational programs are closed to individuals with disabilities, and in this round-about way the City seems to be arguing that because no discriminatory animus exists, there is no Title II violation. Certainly intentional discrimination is banned by Title II. But further, actions that have the *effect* of discriminating against individuals with disabilities likewise violate the ADA.[12] The most directly applicable part of the regulations under Title II provides:

> A public entity may not, directly or through contractual or other arrangements, utilize criteria or methods of administration:
>
> (i) That have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability;
>
> (ii) That have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities ...

28 C.F.R. § 35.130(b)(3).

Thus, although the City is not required to offer to the public (disabled or non-disabled) any type of recreational or leisure programs in the first place, when it does provide and administer such programs, it must use methods or criteria that do not have the purpose or effect of impairing its objectives with respect to individuals with disabilities.

The complete elimination of the Dreher Park Center programs clearly has the effect of impairing the Leisure Services Department's self-professed "Mission Statement" to "[provide] comprehensive and quality recreation services/entertainment"[13] with respect to Plaintiffs and other disabled persons. There are no equivalent programs provided by the County of Palm Beach or any other neighboring municipal or private entities (which are also facing shrinking budgets) that can fill the void left by the elimination of these programs. Susan Buza Deposition at 11–12, 15–19; Karen Herrick Deposition at 8–9, 51; Mary Ann Devine Deposition at 10–12. While it is true that there is no evidence of deliberate exclusion of disabled persons from the general recreational programs offered by the City, it is clear that many of the general programs are unable to offer the benefits of recreation to individuals with disabilities because of the nature of the recreational activities and the physical and other limitations of persons with disabilities. See Karen Herrick Deposition at 11–24, 41–42; Bob Burdett Deposition at 8–14. Although the ADA contemplates that public entities will provide "integrated settings" for services and programs, the requirement is for "the most integrated setting *appropriate* to the needs of qualified individuals with disabilities." 28 C.F.R. 35.130(d). Therefore, the ADA contemplates that different or separate benefits or services be provided if they are "necessary to provide qualified individuals with disabilities with aids, benefits, or services that are as effective as those provided to others." 28 C.F.R. 35.130(b)(1)(iv). It appears from the evidence that City had of-

---

creational programs" or, for that matter, *any* recreational programs. However, the ADA does require that persons with disabilities be given *equal* access to whatever benefits the City offers to persons without disabilities. See generally *Alexander v. Choate,* 469 U.S. 287, 303, 105 S.Ct. 712, 721, 83 L.Ed.2d 661 (1985) (Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, a progenitor of Title II of the ADA, does not guarantee "adequate health care" for the disabled, but rather requires equal—no better and no worse—Medicaid benefits be provided to disabled recipients as for non-disabled recipients). Further, although the City is *permitted* to provide recreational benefits that are better than those provided to non-disabled persons, see 28 C.F.R. § 35.130(c), the City is not required to do so.

Secondly, the City is not required to make any modifications that would "fundamentally alter the nature of the service, program or activity," 28 C.F.R. 35.130(b)(7), or that would be futile in eliminating a "direct threat to the health or safety of others." See Appendix A at 448.

12. This is consistent with the Supreme Court's interpretation of § 504 of the Rehabilitation Act, which is that § 504 covers *effective* discrimination as well as discrimination by design. *Alexander v. Choate* at 292–97, 105 S.Ct. at 715–18.

13. FY94 Proposed Budget/Departmental Summary.

fered the Dreher Park Center programs precisely because they were needed to give equal benefits of recreation to persons with disabilities. When these programs were eliminated, Plaintiffs were denied the benefits of the City's leisure services in contravention of Title II.

■ Lastly, there is strong evidence that the denial of the benefits of recreation was by reason of Plaintiffs' disabilities. The City argues that there is no discriminatory intent against the disabled population, but rather that fiscal concerns dictated the elimination of the Dreher Park Center programs. However, at oral argument the City was unable to account for the extreme disparity between the extent of the budget cuts for the disabled population and the non-disabled, nor has any evidence of any other legitimate reason been presented. This is a significant failure of proof because while Title II does not require any particular level of services for persons with disabilities in an absolute sense, it does require that any benefits provided to non-disabled persons must be equally made available for disabled persons. Therefore, had the City cut their entire budget for the Department of Leisure Services, effectively eliminating recreational programs for disabled and non-disabled alike, the ADA would not be implicated because both groups would be equally affected.[14] However, if the City chooses to provide leisure services to non-disabled persons, the ADA requires that the City provide equal opportunity for persons with disabilities to receive comparable benefits.

The Court accordingly holds that Plaintiffs have shown a substantial likelihood of prevailing on the merits of the ADA claim because there is persuasive evidence for and a lack of any evidence against the finding that the complete elimination of the Dreher Park Center programs denies the Plaintiffs of an equal access to recreational services provided by the City on account of Plaintiffs' disabilities.

### B. Irreparable Injury

■ The Court finds that Plaintiffs are suffering irreparable injury in the absence of the kinds of programs previously offered by the City, which cannot be remedied by monetary damages. These City sponsored programs are of great importance in the lives of individuals with disabilities. Indeed, they are even more essential to disabled than to non-disabled persons because various factors (i.e., the limited access to leisure activities, the need for greater supervision, need for trained personnel, physical and other impairments) make it much more difficult for individuals with disabilities to create their own recreational opportunities. The elimination of the Dreher Park Center programs creates irreparable harm because these social, athletic, and other leisure programs present opportunities for recreation that are not being otherwise offered. These programs, prior to their elimination, were contributing to a sense of emotional and psychological well-being, the injury for which injunctive relief is appropriately granted. See generally *Chalk v. U.S. Dist. Court Cent. Dist. of California*, 840 F.2d 701, 709 (9th Cir.1988) (non-monetary deprivation of sense of well being from satisfying job situation is irreparable harm) and cases cited therein.

### C. Greater Injury to Plaintiffs than Potential Harm to Defendant

■ The Court also finds that irreparable harm suffered by Plaintiffs outweighs the potential harm to the City. The City argues that the public purpose of fiscal integrity and maintaining a balanced budget outweighs the

---

**14.** The Court clarifies that this ruling is not based on the showing of disparate/discriminatory funding *per se*. That is to say, even though the City has cut the Dreher Park Center programs disproportionately from other recreational programs, the disparate funding, in and of itself, would not violate the ADA *if* the City could show that what remained of the City's Department of Leisure Services sufficiently gave individuals with disabilities equal access to the benefits of the City's recreational program. The City asserts this, and attempts to characterize the Dreher Park Center programs as "special benefits beyond those required" by the ADA. However, Defendant has offered no evidence to this effect. Rather, the evidence presented is that without the Dreher Park Center programs, Plaintiffs are without a meaningful access to the benefits of the City's recreational programs. See e.g., depositions of Karen Herrick, Bob Burdett. It is this effective denial of equal benefit that violates the ADA.

 

injury to Plaintiffs. First, the expenditure of funds cannot be considered a harm if the law requires it. *Stone v. City and County of San Francisco*, 968 F.2d 850, 858 (9th Cir.1992). Further, some $170,000 in the context of a $6.5 million budget does not create any real issues of "fiscal integrity" nor presents a threat to an otherwise balanced budget.[15]

### D. *Public Interest*

 Although there is a substantial public interest in balancing the City's budget, as discussed above this interest is not disserved to any significant extent by the continued funding of the Dreher Park Center programs. Further, beyond the interests of the 300 plus disabled individuals that participate in the programs offered by the City, the public also has an interest in meeting the recreational needs of people with disabilities, as well as in upholding the principle of equal rights for individuals with disabilities. The equality of all persons is the underlying principle of the ADA, and one which the public has a strong interest in promoting.

### III. *Conclusion*

THE COURT has considered the Motion and the pertinent portions of the record, and being otherwise fully advised in the premises, it is

ORDERED AND ADJUDGED that the said Motion be, and the same is hereby GRANTED. It is further ORDERED AND ADJUDGED as follows:

1. The City of West Palm Beach shall immediately take all necessary steps to afford the benefits of the City's recreational program to persons with disabilities in full compliance with Title II of the ADA. The City shall submit to this Court within fifteen (15) days of this Order its plan for compliance herewith.

2. The City shall immediately begin to take steps to comply with and conclude with all

due speed its compliance with the requirements of 28 C.F.R. §§ 35.105, 35.106 and 35.107, relating to self-evaluation, notice and designation of responsible employee and adoption of grievance procedures. The City shall submit to this Court within thirty (30) days of this Order its plan and estimated timetable for compliance therewith.

DONE AND ORDERED.

---

15. The City also casts the $9.8 million dollar budget deficit as constituting "undue financial and administrative hardship", which is a defense against the requirements of the ADA. Again, the issue at hand is the Dreher Park Center and its programs, the funding of which plays a very minor part in the overall budget of the City. The Court is not without sympathy for the difficult budgetary decisions the City must make in attempting to balance the budget. However, under the facts as presented, the Court cannot conclude that the requirements of Title II would create an undue financial hardship in this case.