# Elaine Howard, Clara Parker and Carolyn Clark v. Department of Social Welfare

[655 A.2d 1102]

No. 93-342

Present: Allen, C.J., Gibson, Morse and Johnson, JJ., and Peck, J. (Ret.), Specially Assigned

Opinion Filed December 30, 1994

*James C. May,* South Royalton Legal Clinic, and *Ian C. Ridlon, Robert C. Brannan, Cynthia E. Frantz, Ronald G. McMullen* and *Jacob B. Perkinson,* Legal Interns, South Royalton, for Plaintiffs-Appellants.

*Jeffrey L. Amestoy*, Attorney General, Montpelier, *Christina M. Byrom*, Assistant Attorney General, and *George Collias*, Legal Intern, Waterbury, for Defendant-Appellee.

*Steven S. Zaleznick, Patricia A. DeMichele* and *Bruce Vignery*, Washington, D.C., for Amicus Curiae American Association of Retired Persons.

*Marilyn Mahusky-Anderson*, Rutland, and *Judith F. Dickson*, Burlington, Vermont Developmental Disabilities Law Project, for Amicus Curiae Vermont Protection and Advocacy, Inc.

**Gibson, J.** Plaintiffs Elaine Howard, Clara Parker and Carolyn Clark appeal from a decision of the Secretary of the Agency of Human Services (Secretary), reversing a decision of the Human Services Board (Board) and terminating plaintiffs' Aid to Needy Families with Children (ANFC) benefits when their children reached age eighteen because the children were not expected to graduate from high school by age nineteen. Plaintiffs claim that it is solely due to the children's disabilities that they could not graduate by age nineteen, and thus, terminating ANFC benefits on this basis violates (1) the Rehabilitation Act of 1973, 29 U.S.C. § 794, (2) the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12132, and (3) the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States. We reverse the decision of the Secretary and reinstate the order of the Board, granting plaintiffs ANFC benefits until their children reach age nineteen.

Plaintiffs are three mothers who were recipients of ANFC benefits. When these causes arose, each mother had a child who was attending school full-time and doing well. All the children were expected to graduate from high school at either age nineteen or age twenty. Each child has repeated at least one year of early elementary school because of a disability. The three children have been diagnosed with specific learning disabilities, and two of the children also have hearing impairments. All three have received special education services. See 3 Code of Vermont Rules, Department of Education § 2362(1)(a) (1992) (to be eligible for special education, student must have disability). The Department of Social Welfare (DSW) does not dispute that, as a result of these disabilities, these children could not graduate before turning age nineteen.

Prior to the eighteenth birthday of each child, the parent received notice from DSW that her benefits were to be terminated after the eighteenth birthday of her child. ANFC regulations provide:

> An individual qualifies under the age criterion as a child if he or she is under 18. In addition, an 18 year old child is eligible if he or she is a full-time student in a secondary school or an equivalent level of vocational/technical training and is expected to complete high school or the equivalent program before reaching his or her nineteenth birthday.

5 Code of Vermont Rules, Welfare Assistance Manual (WAM) § 2301 (1994). Although DSW provides ANFC benefits for needy children age eighteen who are full-time students, it does so only for those children expected to graduate during that year. Because the children in this case did not meet this test, they did not meet the ANFC eligibility requirement for needy, eighteen-year-old students.

Plaintiffs appealed the decision of DSW to the Human Services Board, which concluded that plaintiffs' children did not meet the WAM § 2301 graduate-by-age-nineteen requirement solely because of their disabilities. Further, it held that denying ANFC benefits to the parents of these students, on the basis of disability, denied them the opportunity to participate in the ANFC program to the same extent as other parents of needy, eighteen-year-old students. To comply with the Rehabilitation Act of 1973 and the Americans with Disabilities Act of 1990, the Board decided that DSW was required to make reasonable modifications to the ANFC program to prevent discrimination on the basis of disability. Thus, it held that where the failure to meet the graduation requirement results solely from the child's disability, the ANFC recipient is entitled to receive benefits until the child attains age nineteen. Accordingly, the Board directed DSW to pay plaintiffs ANFC benefits until these children reached age nineteen.

The Secretary of Human Services accepted the findings of the Board but reversed its decision under the authority granted by 3 V.S.A. § 3091(h)(1). The Secretary determined that the Rehabilitation Act would be the applicable statute because it prohibits discrimination in state agencies that receive federal financial assistance. He noted, however, that the graduation requirement in WAM § 2301 mirrors the eligibility requirement of the federal Aid to Families with Dependent Children (AFDC) statute, see 42 U.S.C. § 606(a)(2), that AFDC is a federal-state matching fund program, and that participating states must comply with federal statutes and regulations to receive federal funding. Consequently, the Secretary concluded that DSW was required to impose the graduation requirement. This appeal followed.

## I.

First, we address the jurisdictional issues raised by the parties. DSW argues that the Human Services Board exceeded its authority by holding that the Rehabilitation Act and the ADA conflict with federal AFDC eligibility criteria. According to DSW, the Board does not have authority to determine which federal law to apply in the event of such a conflict. We do not decide this issue because we do not accept DSW's characterization of the Board's decision. The Board did not conclude that the federal laws at issue conflicted, nor did it hold either law invalid. The Board determined that applying the graduation requirement in WAM § 2301 to plaintiffs' children violated both the ADA and the Rehabilitation Act. It concluded, however, that reasonable modifications to the requirement could be made to avoid discrimination on the basis of disability and ordered such modifications to be made. We view this action as applying both AFDC and federal disability law. The Board modified a decision of DSW that was in conflict with federal disability law, action the Board is explicitly authorized to do. See 3 V.S.A. § 3091(d) (Board has authority to reverse or modify agency decisions based on rules that Board determines to be in conflict with state or federal law); see also *Stevens v. Department of Social Welfare*, 159 Vt. 408, 417, 620 A.2d 737, 742 (1992) (Legislature intended Board to hear any case in which individual is aggrieved by DSW action or policy).

Plaintiffs argue that the Secretary erred as a matter of law in reversing the Board because he failed to comply with 3 V.S.A. § 3091(h)(1), which requires the Secretary to "issue a written decision setting forth the legal, factual or policy basis for reversing or modifying a board decision or order." Plaintiffs maintain that the Secretary's decision was incomplete because he did not address plaintiffs' claims under the ADA or the equal protection clause; he addressed only the claims under the Rehabilitation Act. Generally, we would remand a case to allow the Secretary to consider issues that he has failed to address. See 2 C. Koch, Administrative Law and Practice § 9.13C, at 152 (Supp. 1995) (court must remand if agency rationale inadequate); *Beno v. Shalala*, 30 F.3d 1057, 1074-75 (9th Cir. 1994) (remanding to Secretary of Health and Human Services because court should not infer agency had considered issues unless record so indicates). An agency decision should provide a reasonable explanation of its conclusion on each claim before it to provide an adequate record for review, to preclude perfunctory decision-making, and to

satisfy interested members of the public. See 1 C. Koch, *supra*, § 6.55, at 276.

Although the Secretary's decision is not a model of clarity, we construe it as concluding that neither the ADA nor the Rehabilitation Act apply to DSW. See 2 C. Koch, *supra*, § 9.13C, at 151 (court should try to make sense of explanation of less than ideal clarity). He states that "[t]he Rehabilitation Act is the legislation that would apply to the Department," but then concludes that the AFDC eligibility requirements adopted in 1981 are what ultimately govern. In the interest of judicial economy, we do not remand for a decision of plaintiffs' claim under the Equal Protection Clause because we reverse the Secretary's decisions under the Rehabilitation Act and the ADA, and therefore, do not reach the equal protection issue.

## II.

■■ Plaintiffs bring this suit under both § 504 of the Rehabilitation Act and Title II of the ADA. Initially, we note that Title II of the ADA provides persons with disabilities the same rights and remedies as those provided by § 504 of the Rehabilitation Act. 42 U.S.C. § 12133; *Coleman v. Zatechka*, 824 F. Supp 1360, 1367 (D. Neb. 1993). The Rehabilitation Act applies only to programs that receive federal financial assistance, however, while the ADA applies to all public entities. See 29 U.S.C. § 794(b); 42 U.S.C. § 12132. In the instant case, both statutes apply. DSW is subject to the Rehabilitation Act because it receives federal financial assistance, and it is subject to the ADA because it is a public entity. See 42 U.S.C. § 12131(1) ("public entity" means any state government and any department or agency of state government).

■ We analyze plaintiffs' claims under the ADA because the ADA is the most recent enactment of Congressional intent to prohibit discrimination on the basis of disability. Nonetheless, we note that Congress intended that Title II of the ADA be interpreted consistently with prior interpretations of § 504 of the Rehabilitation Act. *Conner v. Branstad*, 839 F. Supp. 1346, 1357 (S.D. Iowa 1993). Thus, our analysis here is consistent with an analysis under § 504 of the Rehabilitation Act. Cf. 42 U.S.C. § 12134(b) (regulations under Title II of ADA shall be consistent with regulations under § 504 of Rehabilitation Act). Moreover, case law construing the Rehabilitation Act is authoritative in construing the ADA, and thus we look to those cases as well in drawing our conclusion in this case.

The purpose of the ADA is "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). Title II of the ADA provides "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To be covered by the ADA, plaintiffs' children must be (1) qualified individuals, (2) with disabilities, (3) denied benefits, (4) by a public entity, (5) by reason of their disabilities. There is no dispute that the children in this case are individuals with disabilities.[1] Nor is there any dispute that plaintiffs were denied benefits by a public entity for the year that their children were age eighteen, although parents of other needy, eighteen-year-old students were entitled to receive ANFC benefits. Nor has DSW contested the Board's finding that the sole reason that these children do not qualify for ANFC benefits is because their disabilities have prevented them from graduating by age nineteen. Accordingly, these children have been denied ANFC benefits by a public entity on the basis of their disabilities.

The issue, therefore, is whether plaintiffs' children are "qualified individuals" under Title II of the ADA. A "qualified individual with a disability" is "an individual with a disability who, *with or without reasonable modifications* to rules, policies, or practices, . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2) (emphasis added). Neither DSW nor the Secretary maintains that plaintiffs fail to meet any of the eligibility criteria except the graduation requirement. Thus, we must examine whether the graduation requirement is an essential eligibility requirement for ANFC, and if so, whether reasonable modifications could be made to this requirement to allow plaintiffs to qualify for ANFC benefits while their children are eighteen years of age.

This analysis follows the decision of the United States Supreme Court in a similar case brought under § 504 of the Rehabilitation Act. In *Alexander v. Choate*, 469 U.S. 287 (1985), Medicaid recipients brought a class action, alleging that a proposed fourteen-day limit on

---

[1] A disability is "a physical or mental impairment that substantially limits one or more of the major life activities," or "a record of such an impairment." 28 C.F.R. § 35.104 (1993). Regulations implementing the ADA recognize specific learning disabilities as impairments and learning as a major life activity. *Id.* § 35.104 *Disability* (1)(ii) & (1)(2).

inpatient coverage would have a discriminatory effect on people with disabilities because the percentage of disabled Medicaid recipients requiring more than fourteen days of care was higher than the percentage of nondisabled Medicaid recipients requiring such care. Indeed, the claimants maintained that any limit on the number of inpatient care days would have a disproportionate effect on people with disabilities and therefore violated the Rehabilitation Act. The Court upheld the fourteen-day limitation, stating that "[t]he new limitation does not invoke *criteria* that have a particular exclusionary effect on the handicapped." *Id.* at 302 (emphasis added). Moreover, the Court noted that the limitation was "neutral on its face" and did "not distinguish between those whose coverage will be reduced and those whose coverage will not *on the basis of any test*, judgment, or trait that the handicapped as a class are less capable of meeting or less likely of having." *Id.* (emphasis added). Nonetheless, the Court recognized that, in some circumstances, reasonable accommodations in a grantee's program or benefit may have to be made to assure meaningful access to a program. *Id.* at 301.

■ We believe that the graduation requirement in WAM § 2301 is precisely the type of "criterion" or "test" to which the Court was referring in *Alexander*, because it has "a particular exclusionary effect" on persons with disabilities. Indeed, ANFC coverage is reduced by one year of benefits on the basis of this test, that children with learning disabilities as a class are less capable of meeting. The fourteen-day limitation in *Alexander* is analogous to the ANFC age criterion qualifying all individuals under eighteen years of age. Neither the fourteen-day nor the eighteen-year-old age limitation exclude individuals, or reduce benefits, on the basis of a test that screens out a class of disabled persons. Needy, eighteen-year-old students, however, qualify only if they are able to meet the graduation requirement, a test that tends to exclude those students who have or have had learning disabilities. See 28 C.F.R. § 35.130(b)(1)(ii) (1993) (public entity may not, on basis of disability, afford qualified individual with disability opportunity to benefit from aid that is not equal to that afforded others).

## III.

Plaintiffs have established that the graduation requirement in WAM § 2301 tends to exclude persons with disabilities from qualifying for the age-eighteen ANFC benefits. ADA regulations provide:

A public entity shall not impose or apply eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any service, program, or activity, *unless such criteria can be shown to be necessary* for the provision of the service, program, or activity being offered.

28 C.F.R. § 35.130(b)(8)(emphasis added). Accordingly, to uphold this eligibility criterion, DSW must show that the graduation requirement is necessary for the provision of the ANFC program and, consequently, plaintiffs' children do not meet an *essential* eligibility criterion. See *Coleman*, 824 F. Supp. at 1369-70 (examining eligibility requirements to determine whether they are necessary to program and can properly be considered "essential" eligibility requirements).

■ DSW first argues that it must impose the graduation requirement in WAM § 2301 to comply with the federal AFDC statutes. AFDC, like the Medicaid program at issue in *Alexander*, is a cooperative federal-state social service program that is part of the Social Security Act. See 42 U.S.C. §§ 601-687; *Stowell v. Ives*, 976 F.2d 65, 68 (1st Cir. 1992). States that choose to participate in the program must obtain approval for a state plan from the Secretary of the Department of Health and Human Services (HHS) before receiving the federal funding contribution. *Stowell*, 976 F.2d at 68. These social welfare programs are administered by the states but must comply with federal statutes and regulations. *Id.* Federal law provides that, to qualify for AFDC, a child must be:

(A) under the age of eighteen, or (B) *at the option of the State*, under the age of nineteen and a full-time student in a secondary school (or the equivalent level of vocational or technical training), if, before he attains age nineteen, he may reasonably be expected to complete the program of such secondary school (or such training).

42 U.S.C. § 606(a)(2) (emphasis added). According to DSW, it is required to enforce the graduation requirement in order to receive federal funding for the Vermont ANFC program. We disagree for three reasons.

First, federal law does not impose the graduation requirement. Under the federal AFDC scheme, it is the option of the participating state to accept federal matching funds for needy, eighteen-year-old, full-time students expected to graduate before reaching age nineteen. DSW selected this option.

Second, we find nothing in the AFDC statute or implementing regulations that prohibits a state from granting benefits to families with needy children in the absence of federal matching funds. On the contrary, under federal regulations, a state plan under the AFDC statute must "[p]rovide that the State agency will establish methods for identifying the expenditures for assistance for any groups included in the plan for whom Federal financial participation in assistance may not be claimed." 45 C.F.R. § 233.10(a)(2) (1993). Assuming that the federal government would not provide any contribution to ANFC benefits for plaintiffs in this case, DSW may, nonetheless, provide such benefits from state funding. Cf. *Engelman v. Amos*, 404 U.S. 23, 24 (1971) ("nothing in the federal [AFDC] statute that prohibits a State from making vendor payments so long as they are made from state funds without federal matching").

Finally, and perhaps most importantly, there is nothing in the record to indicate that HHS has refused to make reasonable accommodations by providing AFDC matching funds in individual cases where necessary to prevent discrimination on the basis of disability. Absent such a showing, we will not conclude that federal matching funds are not available where the ADA demands reasonable accommodations to a federal-state cooperative benefit program. We note that HHS promulgated the regulations implementing the Rehabilitation Act, which provide that reasonable modifications required by the Act for educational institutions include "changes in the length of time permitted for the completion of degree requirements." 45 C.F.R. § 84.44(a). We see no reason that HHS would not consider the same modification to be reasonable when applied to a benefit program.

DSW next argues that the Vermont Legislature has not appropriated funds to provide benefits to needy, eighteen-year-old, full-time students who are not expected to graduate by age nineteen, and that the Commissioner of DSW has no affirmative obligation to request ANFC funding for other children. The Vermont statute provides ANFC benefits for a needy child who:

Is under the age of eighteen years, or, *if the commissioner determines that appropriated funds permit,* is under the age of twenty-one years and, as determined under standards prescribed by the commissioner, is a student regularly attending a secondary school, or is regularly attending a course of vocational or technical training designed to fit him for gainful employment[.]

33 V.S.A. § 1101(1)(B) (emphasis added). DSW maintains that, under this statute, the Commissioner of DSW determines whether there is sufficient funding in the appropriation to grant benefits to any children who have reached eighteen years of age.

■■ We agree with DSW that the commissioner has the authority to determine whether funding is sufficient to provide benefits to children who have attained age eighteen, and that the commissioner has no obligation to request such funding from the Legislature. Neither assertion, however, supports the notion that DSW may rigidly employ a screening criteria that tends to discriminate against a class of disabled persons in order to remain within appropriation limits. To comply with Title II of the ADA, DSW must adopt a nondiscriminatory benefit structure, within current appropriations or by requesting additional funding. We conclude that DSW has not shown that the graduation requirement is necessary for the provision of the ANFC program. This criterion is therefore not an essential eligibility requirement; consequently, plaintiffs' children are "qualified individuals" under the ADA.[2] Cf. *Concerned Parents to Save Dreher Park Center v. City of West Palm Beach*, 846 F. Supp. 986, 990 (S.D. Fla. 1994) (only essential eligibility requirement for city-sponsored recreational program is to request benefit of recreational program).

■ DSW's main argument, however, is that WAM § 2301 is exempt from the requirements of the Rehabilitation Act and the ADA because it mirrors 42 U.S.C. § 606(a). DSW maintains that it is only required to follow the AFDC statute, and that neither the Rehabilitation Act nor the ADA is applicable. DSW also argues that because the AFDC graduation requirement, 42 U.S.C. § 606(a), was enacted after § 504 of the Rehabilitation Act, it trumps the discrimination law. We find no authority to support these contentions.

Prior to 1981, the AFDC statute defined "dependent child" to include children under the age of eighteen and children under age twenty-one regularly attending school. 42 U.S.C.A. § 606(a) (historical and statutory notes). In an effort to cut spending, Congress redefined "dependent child" in the Omnibus Budget Reconciliation Act of 1981 to include only children under age eighteen and children

---

[2] Even if the graduation requirement were an essential eligibility requirement, DSW must consider whether "nonqualifying" disabled individuals may become qualified with reasonable modifications. See *Concerned Parents to Save Dreher Park Center v. City of West Palm Beach*, 846 F. Supp. 986, 990 (S.D. Fla. 1994).

under age nineteen expected to graduate before attaining age nineteen. 42 U.S.C. § 606(a)(2). According to DSW, neither the ADA nor the Rehabilitation Act "amends" or "supersedes" the AFDC statute to extend benefits to individuals who are not covered by the 1981 definition. It contends that Congress was fully aware of the obligations imposed by the Rehabilitation Act but nonetheless enacted the new "dependent child" definition; Congress did not intend the Rehabilitation Act to impose additional conditions on AFDC state recipients.

We disagree because we do not believe that Congress intended public entities acting under the authority of federal legislation to be exempt from the Rehabilitation Act or the ADA. The ADA was intended to provide comprehensive legislation to eliminate discrimination against individuals with disabilities. 42 U.S.C. § 12101(b)(1). The rationale of DSW suggests that Congress must include a nondiscrimination clause at the end of every statute it enacts in order to provide the protection of the ADA. We also reject the notion that applying the ADA and the Rehabilitation Act to the ANFC program means that the disability laws supersede the AFDC statute; rather, they merely require flexibility in administering the AFDC program to ensure that disabled individuals are not excluded from participation on the basis of disability.

▮ DSW cannot rigidly apply eligibility rules that disqualify disabled individuals by reason of their disabilities. See *Pandazides v. Virginia Bd. of Educ.*, 946 F.2d 345, 349 (4th Cir. 1991) (defendants cannot "mechanically invoke any set of requirements" and pronounce disabled applicant not qualified). The ADA requires an individualized assessment and a determination of reasonable accommodation on a case-by-case basis. *D'Amico v. New York State Bd. of Law Examiners*, 813 F. Supp. 217, 221 (W.D.N.Y. 1993); accord *Pandazides*, 946 F.2d at 349; *Glanz v. Vernick*, 756 F. Supp. 632, 638 (D. Mass. 1991); *Coleman*, 824 F. Supp. at 1369. In sum, we conclude that the ADA does not conflict with the AFDC statute but, rather, demands reasonable accommodations for qualified individuals with disabilities.

## IV.

Plaintiffs request that DSW make reasonable modification of the graduation requirement to comply with Title II of the ADA. In *Alexander*, the Supreme Court explained that § 504 of the Rehabilitation Act does not require "fundamental" or "substantial" modifica-

tions in a program but that "reasonable" accommodations in the program may have to be made to ensure meaningful access for qualified individuals with disabilities. 469 U.S. at 300-01. "[T]he ultimate question is the extent to which a grantee is required to make reasonable modifications in its programs for the needs of the handi-capped." *Id.* at 299 n.19. Consistent with *Alexander*, regulations promulgated pursuant to Title II of the ADA provide:

> A public entity shall make reasonable modifications in policies, practices, or procedures when modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity.

28 C.F.R. § 35.130(b)(7). Thus, DSW must modify the graduation requirement unless it can demonstrate that modification of this criterion would fundamentally alter the nature of the ANFC pro-gram.

DSW has not shown how the modification requested would alter the nature of the ANFC program. The main objective of the ANFC program is to support needy children. *Beno*, 30 F.3d at 1070. DSW asserts that ANFC is a means-tested public assistance program, but does not claim that plaintiffs are not needy or explain how enforcing the graduation requirement in these cases furthers the goals of the ANFC program. On the contrary, DSW argues that the criterion is a limitation on providing benefits to needy children. Benefit programs must have limits; however, limits cannot be imposed by criteria that discriminate against classes of disabled persons. Such a limit is not fundamental to the nature of the ANFC program. See *Concerned Parents*, 846 F. Supp. at 991 (city not required to offer recreational programs to public, but "when it does provide and administer such programs, it must use methods or criteria that do not have the purpose or effect of impairing its objectives with respect to individ-uals with disabilities").

DSW also claims that extending benefits for plaintiffs herein would fundamentally alter the program because there are "conceivably" many more families with disabled children who are not expected to graduate by age nineteen as a result of a disability. According to DSW, extensions of benefits cost money and none of it would be federally matched, thus turning a cooperative federal-state program into a state-funded program for qualifying disabled persons of this age

group. We do not decide if such circumstances would amount to a fundamental alteration of the program because DSW has presented no evidence on the number of children who would qualify under the modified criterion ordered by the Human Services Board, and no evidence that the federal government has refused to make reasonable modifications to its funding participation. Arguments based entirely on "conceivable" facts are insufficient to support the burden, under 28 C.F.R. § 35.130(b)(7), of "demonstrating" that the modification would fundamentally alter the nature of the ANFC program.

Finally, DSW argues that plaintiffs' request for extended benefits is not required under the ADA because the ADA merely requires DSW to treat disabled individuals equally to nondisabled individuals. According to DSW, extending plaintiffs' benefits until their children reach age nineteen amounts to affirmative action, which is not required under the ADA. DSW relies on *Southeastern Community College v. Davis*, 442 U.S. 397, 411 (1979), in which the United States Supreme Court stated that § 504 of the Rehabilitation Act does not impose an "affirmative-action obligation on all recipients of federal funds." The Court clarified this statement in *Alexander*, however, explaining that, in the context of *Davis*, the term "affirmative action" referred to modifications of programs that would be substantial or fundamental alterations in the nature of the program, rather than changes that would be reasonable accommodations. *Alexander*, 469 U.S. at 300-01 n.20. Thus, modifications that are reasonable are not affirmative action.

We conclude that DSW has not shown that the graduation requirement is fundamental to the ANFC program, nor has DSW argued that the modification requested by plaintiffs is unreasonable. We hold that extending plaintiffs' ANFC benefits until their children reach age nineteen is a reasonable modification of the graduation requirement and is, therefore, mandated by Title II of the ADA.

## V.

Finally, plaintiffs argue that if they prevail, they are entitled to an award of attorney fees pursuant to 29 U.S.C. § 794a(b) (court may award reasonable attorney's fees to prevailing party in action brought under § 504 of the Rehabilitation Act) and 28 C.F.R. § 35.175 (1993) (court may award reasonable attorney's fees to prevailing party in action brought under ADA). DSW has not contested such an award in the event that plaintiffs prevail. We conclude that plaintiffs

have prevailed in this action and therefore grant them reasonable attorney's fees.

*Reversed. Decision of the Human Services Board is reinstated, and the case is remanded for determination of attorney's fees and costs.*

**Morse, J.**, concurring. I concur in the Court's judgment, but I write separately to express my view that DSW's legal position justifying withholding of ANFC benefits was frivolous, caused a waste of judicial resources, and unfairly placed the unnecessary burden of litigation on plaintiffs.

The facts were not in dispute. DSW admitted that the children were disabled, did not meet the graduation requirement solely because of their disabilities, and met every other eligibility criteria for ANFC benefits. Obviously, graduation – unlike residence, age, financial need, and deprivation of parental support or care, see 33 V.S.A. § 1101 – was not an "essential" element of the ANFC program. DSW simply did not contest that the regulation in issue discriminated against plaintiffs. Its defense was the mere existence of the regulation. In a flurry of rhetoric, DSW ceded its case and argued that a regulation that undeniably discriminated against disabled children had to be followed. DSW contended it was exempt from the mandates of the Rehabilitation Act and the ADA. The question is why?

The answer lies in a statement made in DSW's brief to this Court. "[DSW] cannot make an independent determination that the federal law conflicts with § 504 or the ADA *and still participate in the federal program. If a state fails to adhere to provisions of the federal program, it loses federal financial participation.*" (Emphasis added). In other words, DSW would not follow the law if it meant losing federal receipts. Yet, as a public entity that receives federal funding, DSW is required to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability." 28 C.F.R. § 35.130(b)(7) (federal regulations promulgated by Department of Justice implimenting ADA and governing nondiscrimination on basis of disability in state and local government services).

This disturbing posture was maintained even though DSW, in light of the ADA, did nothing to determine the availability of federal funds. At oral argument counsel for DSW confirmed its lack of inquiry.

> Justice Gibson: Has the Secretary made any effort to determine whether federal funds would be available if the [18]-year-old disabled were to be compensated?

Counsel: I think it's fairly clear within the statute and the [regulations] that you set up your state plan according to the regulations and only state plans that have been approved, that those are the benefits you are going to get.

Justice Gibson: I take it your answer is no.

. . . .

Justice Gibson: . . . [H]ow can the Secretary deny benefits without checking with the federal government as to its interpretation?

Counsel: This is a fairly straight-forward statute . . . .

It is most regrettable that an issue as predictable as the one here would reach this Court without any effort by DSW to resolve it with the applicable federal agency. Because DSW made no effort to determine the availability of federal funds, this Court cannot be sure that any actual conflict exists.

It seems that this case was an effort to steer an imagined funding problem to the judiciary. Rather than the judiciary being the "court of last resort" to resolve a real dispute, it was the first stop to resolve a funding dilemma in difficult fiscal times. DSW's failure to take initiative created a hardship on the three families involved in this appeal, as well as unnecessary litigation. This hardship and waste of resources might have been avoided with a telephone call early on to the United States Department of Health and Human Services.