### Beverly M. Stevens v. Department of Social Welfare

[620 A.2d 737]

No. 91-227

Present: **Allen, C.J., Gibson and Johnson, JJ., and Peck, J. (Ret.), Specially Assigned**

Opinion Filed December 11, 1992

*Sheila E. Reed,* Vermont Senior Citizens Law Project, St. Johnsbury, for Plaintiff-Appellant.

*Jeffrey L. Amestoy,* Attorney General, Montpelier, and *Wendy A. Burroughs,* Assistant Attorney General, Waterbury, for Defendant-Appellee.

**Gibson, J.** Plaintiff Beverly Stevens appeals from a decision of the Secretary of the Agency of Human Services (Secretary) reversing a decision of the Human Services Board (Board) that granted her retroactive Medicaid benefits. The Secretary concluded that reversal was necessary because the Board (1) exceeded the authority granted it in 3 V.S.A. § 3091(d) by applying the doctrine of equitable estoppel, and (2) erroneously held that the elements of estoppel were met. We reverse the Secretary's decision and reinstate the decision of the Board.

In May of 1990, plaintiff, a sixty-year-old woman, was diagnosed with cancer. At the time of her diagnosis, she was employed and had accumulated $4,167.64 in savings. On June 19, 1990, plaintiff was hospitalized to undergo surgery. While in the hospital, a social worker assisted plaintiff in applying for Medicaid. Her application indicating that she had $4,167.64 in savings was filed on June 26, 1990.

On July 9, 1990, a social welfare eligibility specialist from the Department of Social Welfare (DSW) telephoned plaintiff to

discuss her application. By that time, plaintiff had incurred doctors' bills related to her surgery totaling $2,411.28. She discussed with the eligibility specialist whether she should pay the doctors' bills with her savings. The eligibility specialist told plaintiff "to wait to make payments until she learned whether she met the disability criteria for Medicaid eligibility." Plaintiff had no further communication with DSW regarding her doctors' bills or her savings.

To be eligible for Medicaid, plaintiff had to satisfy two requirements: (1) her income and resources had to be within the eligibility limits, and (2) she had to meet the criteria necessary to establish that she was disabled. The social welfare eligibility specialist determines only whether an applicant meets the financial requirements; the determination on disability is made by medical personnel at the Disability Determination Unit (DDU) in Waterbury. When the DSW eligibility specialist telephoned plaintiff on July 9, 1990, she had reviewed plaintiff's financial status, but no determination as to disability had been made.

In late July, plaintiff spoke with an advocate from the Area Agency on Aging concerning her Medicaid eligibility. The advocate told plaintiff that she had to spend all but $2,000 of her savings to be eligible for Medicaid.

Between June 26 and August 8, 1990, plaintiff spent about $2,550 of her savings on maintenance, prescriptions, doctors appointments and other personal expenses. At the end of July 1990, after speaking with the advocate, plaintiff purchased a car for $750, ball joints for $80 and a new tire for $30 so that her daughter could drive her from St. Johnsbury to Hanover, New Hampshire, for chemotherapy at Dartmouth-Hitchcock Medical Center. Later, plaintiff discovered that she did not need the car for this purpose because she could receive her chemotherapy treatments in St. Johnsbury.

On August 8, 1990, plaintiff filed a second Medicaid application with the assistance of the advocate from the Area Agency on Aging, although she had not yet received a decision concerning the first application. The new application indicated that plaintiff's savings totaled only $1,617.

In September, DSW notified plaintiff that the first application had been denied but that she was eligible for Medicaid as of

August 1, 1990, based on her second application. Retroactive benefits for the three months prior to the second application (May, June, and July) were denied because plaintiff had excess resources amounting to $2,167.64 during this period. Although plaintiff would have been eligible for benefits during these three months if she had spent the excess resources on medical expenses, DSW found that only $1,027.11 had been spent on allowable medical expenses. This left plaintiff with the $2,411.28 in unpaid doctors' bills from the surgery in June.

On April 4, 1991, the Human Services Board reversed DSW's denial of benefits based on the first application and also found plaintiff eligible for retroactive benefits for the three months prior to this application, March, April and May. The Board concluded that DSW correctly applied the regulations regarding the dates of plaintiff's eligibility. Nevertheless, the Board held that DSW was estopped from denying plaintiff retroactive benefits because the erroneous information it provided to plaintiff caused her to become ineligible.

The Board found that plaintiff would have been eligible based on the first application if she had spent her excess resources on medical expenses she incurred during March, April, May and June. Although plaintiff had doctors' bills from this period totaling $2,411.28, she did not make any payments toward them because she was told by the eligibility specialist to wait until the determination on disability was made. Further, the Board found that if she had been told that she was required to spend excess resources on medical expenses in order to be eligible for retroactive benefits, she would have paid the doctors' bills, rather than purchasing a car to "spend-down" her resources. The Board concluded that plaintiff was left with $2,411.28 in unpaid medical bills that she cannot afford to pay because she relied on the information provided by the eligibility specialist.

On April 16, 1991, the Secretary issued an opinion in which he accepted the Board's findings of fact but reversed its decision because he concluded that the Board did not have the authority to apply the doctrine of equitable estoppel; he found further that, even if the Board had this authority, plaintiff had not met the elements of estoppel. Plaintiff appeals this decision.

I.

The Medicaid program was established in 1965 by Title XIX of the Social Security Act, 42 U.S.C. §§ 1396–1396n, to provide

medical assistance to the poor. *Massachusetts Ass'n of Older Americans v. Sharp*, 700 F.2d 749, 750 (1st Cir. 1983); 42 U.S.C. § 1396. The program provides federal financial assistance to those states that choose to participate provided they submit and follow an approved state plan that complies with the Act and federal regulations. *Sharp*, 700 F.2d at 750; see 42 U.S.C. § 1396a (requirements for state plans). In Vermont, the Medicaid program is administered by DSW.

To be eligible for Medicaid based on disability, applicants must meet both income and resource requirements. See 4 Code of Vermont Rules, Medicaid Manual §§ 230, 240. The resource limit for one person is $2,000. A person whose resources exceed this maximum, but is otherwise eligible for benefits, may become eligible in two ways. First, Medicaid may be granted for the month in which the application was filed if the resource test is met at any point in the month and all other eligibility criteria are satisfied. *Id.* § 235. Thus, an applicant with excess resources may become eligible for Medicaid by spending or giving away the excess. If, however, the applicant spends the excess resources on allowable medical expenses, the applicant may be eligible for up to three months of retroactive benefits. *Id.*

■ The parties agree that DSW has an affirmative obligation to inform applicants who exceed the resource limit of the "spend-down" provisions. This affirmative obligation arises pursuant to 42 C.F.R. § 435.905(a), which provides that the state agency responsible for administering the Medicaid program:

must furnish the following information in written form, and orally as appropriate, to all applicants and to all other individuals who request it:
(1) The eligibility requirements.
(2) Available Medicaid Services.
(3) The rights and responsibilities of applicants and recipients.

In *Lavigne v. Department of Social Welfare*, 139 Vt. 114, 423 A.2d 842 (1980), we held as a matter of law that DSW "has an affirmative duty to advise applicants specifically of their rights under ANFC," the Aid to Needy Families with Children program. *Id.* at 118, 423 A.2d at 844. Like the Medicaid program,

ANFC is a program based on cooperative federalism. *Id.* at 116, 423 A.2d at 843. States that choose to participate in the program must conform to federal statutes and regulations regarding the program. The affirmative duty to inform applicants about eligibility requirements for ANFC arose from 45 C.F.R. § 206.10(a)(2), which provided in part that "[a]pplicants and all individuals who inquire about the program shall be informed about the eligibility requirements and their rights and obligations under the program." This regulation is similar to 42 C.F.R. § 435.905(a), the Medicaid provision mandating that information be furnished regarding the Medicaid program.

In *Doe v. Wilson, Commissioner of DSW*, Medicare & Medicaid Guide (CCH) ¶ 32,148, at 10,541 (D. Vt. Aug. 16, 1982), the United States District Court for the District of Vermont held that the Commissioner of DSW had violated the federal rights of Medicaid applicants, under 42 C.F.R. § 435.905, by failing to inform them of spend-down requirements that could be used to advance their Medicaid eligibility dates. *Id.* at 10,541. Following *Lavigne* and *Doe*, we conclude that DSW has an affirmative obligation to provide Medicaid applicants, and other individuals who request it, with information concerning the Medicaid eligibility requirements, including resource spend-down provisions.

We do not decide the extent of this obligation because in this case it is clear that plaintiff spoke with the DSW employee responsible for determining financial eligibility. The social welfare eligibility specialist is responsible for determining whether an applicant meets the financial requirements necessary to qualify for Medicaid benefits. As such, she is obligated to inform applicants of financial eligibility requirements and the rights and obligations of applicants under the Medicaid program. In this case, the DSW financial eligibility specialist called plaintiff to discuss her applications, and plaintiff asked her whether she should make payments toward her outstanding doctors' bills. Under these circumstances, we have no doubt that the DSW employee had an affirmative duty to inform plaintiff of her options.

Indeed, DSW does not dispute that the eligibility specialist had an obligation to *inform* plaintiff of her options under the Medicaid regulations. It maintains, however, that she has no obligation to *advise* an applicant to take a specific course of

action. DSW claims that the eligibility specialist carried out her duty appropriately. We disagree.

The eligibility specialist told plaintiff not to make payments on her doctors' bills until a determination on disability was made. She did not, however, inform plaintiff of the spend-down provisions or the necessity of spending excess resources on allowable medical expenses in order to preserve coverage for the three months prior to application. Thus, she did not inform plaintiff of the eligibility requirements or her rights and obligations under the Medicaid program as required by 42 C.F.R. § 435.905(a). On the contrary, she advised plaintiff to take a single course of action, to refrain from making payments on the outstanding bills for the surgery.

DSW claims that the eligibility specialist did the best she could do to convey information on Medicaid eligibility requirements to plaintiff but that plaintiff was ill and very upset at the time they spoke and the specialist did not want to push her too hard. Although it is understandable that plaintiff was not feeling well following surgery and that the specialist did not want to upset her further, we do not believe that these circumstances relieve DSW of its obligation under federal law to fully inform the applicant of her rights and obligations. DSW's communication with plaintiff on July 9, 1990, was inadequate to provide plaintiff with the information necessary to make an informed decision, and it did not follow-up on the initial conversation by telephone or letter to ensure that plaintiff was adequately informed. We conclude that DSW violated 42 C.F.R. § 435.905(a) by failing to furnish plaintiff with adequate information.

## II.

The second issue on appeal is whether the Board has the authority to apply the doctrine of equitable estoppel. The Secretary decided that the Board exceeded its authority as granted in 3 V.S.A. § 3091(d), which states:

> After the fair hearing the board may affirm, modify or reverse decisions of the agency; it may determine whether an alleged delay was justified; and it may make orders consistent with this title requiring the agency to provide appropriate relief including retroactive and prospective benefits. *The board shall consider, and shall have the au-*

*thority to reverse or modify, decisions of the agency based on rules which the board determines to be in conflict with state or federal law.* The board shall not reverse or modify agency decisions which are determined to be in compliance with applicable law, even though the board may disagree with the results effected by those decisions. (Emphasis added.)

The Secretary ruled that the only issue before the Board at a fair hearing is whether DSW correctly applied valid regulations to the applicant's circumstances in determining eligibility for a DSW program. He held that because the Board concluded that DSW correctly applied the regulations with regard to eligibility dates, the Board was required to affirm DSW's decision. On appeal, DSW maintains that 3 V.S.A. § 3091(d) merely authorizes the Board to determine whether DSW has correctly applied its own rules. We disagree because we do not believe the enabling statute can be so narrowly construed.

■  Under 3 V.S.A. § 3091(d), the Board is authorized to reverse DSW decisions that are based on rules that the Board finds in conflict with state or federal law. There is nothing in the statute that confines the Board to considering whether DSW correctly applied the Medicaid eligibility regulations. On the contrary, the statutory language specifically authorizes the Board to determine whether a decision is in conflict with state or federal law. Thus, it is not inconsistent with its authority under the enabling statute for the Board to conclude, as it did, that DSW "is correct in its application of the regulations *with regard to [plaintiff's] dates of eligibility*" (emphasis added), but that DSW is estopped from applying these regulations because to do so would be in violation of state or federal law.

The Secretary also decided that because the Legislature had not expressly granted the Board equitable jurisdiction, the Board had no authority to apply the doctrine of equitable estoppel. DSW argues on appeal that the enabling statute does not authorize the Board to provide equitable relief.

■  We do not agree that the Legislature must confer broad equitable jurisdiction on the Board in order for it to apply an equitable defense. The statutory scheme indicates that, by providing for administrative appeal before the Board, the Legisla-

ture intended to provide an informal forum to resolve a broad range of disputes in a speedy manner. Under 3 V.S.A. § 3091(e), the Board's written decision must be issued within seventy-five days of the request for hearing. Under 3 V.S.A. § 3091(a), an opportunity for a fair hearing before the Board or its hearing officer must be granted:

> to any individual requesting a hearing because his or her claim for assistance, benefits or services is denied, or is not acted upon with reasonable promptness; or because the individual is aggrieved by any other agency action affecting his or her receipt of assistance, benefits or services, or license or license application; or because the individual is aggrieved by agency policy as it affects his or her situation.

Thus, the Legislature intended the Board to hear any case in which an individual is aggrieved by DSW action or policy that affects that individual. There is no indication that the Board's statutory authorization to determine whether DSW decisions are in conflict with state or federal law is limited in any respect, much less that it excludes consideration of equitable estoppel as a defense. We agree, however, with DSW that the Board is limited in the types of relief it may provide to applicants. Under 3 V.S.A. § 3091(d), the Board is only authorized to "affirm, modify or reverse" DSW decisions. Nevertheless, in this case, the Board reversed the decision, relief it is explicitly authorized to grant.

In reaching this decision, we have also looked to the federal law that established the Medicaid program. Pursuant to 42 U.S.C. § 1396a(a)(1), states that choose to participate in the Medicaid program must comply with an approved state plan that conforms to the mandates of § 1396a. See *Sharp*, 700 F.2d at 750. Subsection (a)(19) of this statute provides that the plan must "provide such safeguards as may be necessary to assure that eligibility for care and services under the plan will be determined, and such care and services will be provided, in a manner consistent with simplicity of administration and the best interests of the recipients." Consistent with § 1396a(a)(19), federal regulations provide that the "policies and procedures" of the agency responsible for administering the Medicaid program "must ensure that eligibility is determined in a manner consist-

ent with simplicity of administration and the best interests of the applicant." 42 C.F.R. § 435.903.

We believe that it would not be "consistent with simplicity of administration and the best interest of the applicant" to require plaintiff to proceed in superior court to challenge a DSW decision simply because she relies on an equitable defense. Moreover, it would be a waste of government resources to require an applicant to pursue some claims before the Board while requiring her to litigate others in superior court. Plaintiff in this case argued in the alternative below. She first contended that the payments that she made for the car, ball joints and new tire should be considered allowable medical expenses under the Medicaid spend-down provisions because they were purchased to transport her to medical treatments. In the alternative, she maintained that DSW should be estopped from denying retroactive benefits because it violated its affirmative duty to provide her with information on eligibility requirements. Under the procedural scheme advanced by DSW, plaintiff would be required to pursue these two claims in two different forums.

We see no reason under the Vermont statutory scheme to prevent the Board from hearing evidence on all the issues the applicant raises, making findings based on this evidence and reaching conclusions by applying state and federal law. This procedure allows the Board to narrow the issues and provide a record for appeal within seventy-five days, a task that would be more burdensome and time-consuming if undertaken in court.

Finally, we note that courts in other states that have considered the issue have arrived at the same result. In *Lentz v. McMahon*, 777 P.2d 83, 261 Cal. Rptr. 310 (1989), the Supreme Court of California held that the doctrine of equitable estoppel could be applied in administrative proceedings and thus a recipient of welfare benefits could raise the defense of equitable estoppel before the fair hearing judge. *Id.* at 91, 261 Cal. Rptr. at 318. Although this case involved recoupment of overpayments, rather than denial of benefits, the court addressed precisely the issue before this Court: "whether the determination that estoppel is applicable in a given case can be made at the administrative hearing, or whether the estoppel issue must be resolved in a judicial proceeding." *Id.* at 88, 261 Cal. Rptr. at 315. See also *Occidental Chemical Agric. Prod., Inc. v. State Dep't of Envtl.*

*Regulation*, 501 So. 2d 674, 679 (Fla. Dist. Ct. App. 1987) (cases in which parties have introduced equitable estoppel issues are routinely handled in the administrative process); *Green v. New Mexico Human Servs. Dep't*, 762 P.2d 915, 918 (N.M. Ct. App. 1988) (remanding to fair hearing officer to determine whether equitable estoppel applied where plaintiff claimed Human Services Department employee misinformed her regarding welfare eligibility).

In reaching its decision, the California Supreme Court considered that, to use government resources efficiently, courts should not be burdened with matters that can be adequately resolved at the administrative level. This principle "serves the twin goals of avoiding delay and unnecessary expense in vindication of legal rights." *Lentz*, 777 P.2d at 88, 261 Cal. Rptr. at 315. The court found that this reasoning was particularly pertinent in cases in which the petitioner asserts equitable estoppel as a defense, because the existence of estoppel is largely a question of fact. In view of the Legislature's intent to provide "a speedy and informal mode of resolving welfare disputes," the court concluded that it was "appropriate to construe the [statutory] scheme as requiring that these largely factual claims be heard in the administrative hearing, despite the absence of specific statutory authorization for such a defense." *Id.* at 89, 261 Cal. Rptr. at 316.

We agree with the reasoning in *Lentz* and hold that the Board has the authority to consider whether equitable estoppel is a defense applicable in cases that come before it.

## III.

The third issue is whether the elements of estoppel have been met in this case. Although estoppel against the government is rare, the state may be estopped where the four elements of estoppel are present and the injustice that would result from a failure to uphold an estoppel is of sufficient magnitude to justify any effect upon public interest or policy that would result from raising estoppel. *In re McDonald's Corp.*, 146 Vt. 380, 383, 505 A.2d 1202, 1203–04 (1985). Thus, in determining whether estoppel against the state is appropriate in a given case, we must first balance the burden on plaintiff if DSW

is not estopped against the public interest affected if DSW is estopped. In this case, we find that both sides of the equation tip in favor of applying estoppel.

■ Plaintiff's burden is $2,411.28 in outstanding doctors' bills that she may never be able to pay because she is unable to work. As the Board concluded, she may face legal action to collect this amount, including the possibility of a lien on her home. If, on the other hand, DSW is estopped from applying its regulations regarding eligibility dates, this will promote the public interest, as well as compliance with federal mandates, of fully informing applicants, or other individuals who inquire, of the eligibility requirements for Medicaid. We conclude that this case presents the circumstances appropriate to applying estoppel against the state. Other states have reached the same conclusion. See, e.g., *Lentz*, 777 P.2d at 87, 261 Cal. Rptr. at 314 (estoppel against welfare agency may be appropriate when agency employee causes claimant to fail to comply with procedural precondition to eligibility); *Glover v. Adult & Family Services Division*, 613 P.2d 495, 499 (Or. Ct. App. 1980) (agency required to disclose eligibility requirements must be estopped from applying prior authorization rule where no information or hopelessly confusing information regarding rule has been given to applicant); see also *Green v. Department of Public Aid*, 520 N.E.2d 860, 864 (Ill. App. Ct. 1988) (department precluded plaintiff from becoming eligible for medical benefits by failing to advise her properly about asset-reduction provision, in violation of her due process rights).

We distinguish this case from *Schweiker v. Hansen*, 450 U.S. 785 (1981), in which the United States Supreme Court held that estoppel against the government was not justified where the claimant was ineligible for benefits because she relied on misinformation provided by a field representative of the Social Security Administration (SSA). *Id.* at 790. In *Hansen*, the worker failed to follow the Claims Manual, the internal handbook for SSA employees, which provided that the employee should advise those that inquire about eligibility to file an application. Unlike the case before this Court, however, the worker had no legal obligation to inform the claimant that she should file an application to determine if she was eligible. The Court noted that "the Claims manual is not a regulation. It has no legal

force, and it does not bind the SSA." *Id.* at 789. The Court relied on this fact in reaching its decision that the government could not be estopped from denying benefits under the circumstances presented. It reasoned that if the government could be estopped in this situation, every alleged violation of an agent to follow instructions to the last detail would create a case of estoppel effectively precluding administration of the SSA. *Id.* at 789–90.

The present case differs in that DSW's affirmative obligation to fully inform applicants is established by federal law, with which participant states must comply to receive federal Medicaid funding. Consequently, this case provides a much stronger argument for applying equitable estoppel against the government. We conclude that the injustice to plaintiff that would result by barring application of equitable estoppel against DSW outweighs the public interest in strict application of regulations regarding eligibility dates.

We must next determine if the Secretary was correct in ruling that the elements of estoppel were not met in the instant case. The four essential elements of estoppel are: (1) the party to be estopped must know the facts; (2) the party to be estopped must intend that its conduct shall be acted upon or the acts must be such that the party asserting the estoppel has a right to believe it is so intended; (3) the party asserting estoppel must be ignorant of the true facts; and (4) the party asserting estoppel must detrimentally rely on the conduct of the party to be estopped. *Burlington Fire Fighters' Ass'n v. City of Burlington*, 149 Vt. 293, 299, 543 A.2d 686, 690–91 (1988). Although the Board found that all four elements were met in this case, the Secretary concluded that plaintiff had failed to establish the first and fourth elements.

In applying these elements, the Board first concluded that the eligibility specialist knew all the pertinent facts when she spoke with plaintiff about this matter. The Secretary, however, concluded that the eligibility specialist did not know all the facts because she did not know on July 9, 1990, that DDU would determine that plaintiff was disabled or that plaintiff would file a second Medicaid application at the direction of an advocate from the Area Agency on Aging. He also found that the eligibility specialist did not know if plaintiff should spend her re-

sources or save them. We find these facts irrelevant to the Board's decision.

The eligibility specialist had sufficient facts to know that the spend-down provisions would come into play if plaintiff were determined to be disabled. She knew that, at the time they spoke, plaintiff had $4,167.64 in savings and that she had incurred $2,411.28 in doctors' bills. She also knew that plaintiff would have to spend-down $2,167.64 of excess resources toward the doctors' bills to be eligible for retroactive Medicaid benefits. Finally, she knew that plaintiff was anxious about the outstanding bills and sought information regarding payments while her application was pending. Thus, she had an obligation to inform plaintiff of the spend-down provisions to ensure that plaintiff was apprised of her rights and obligations.under the Medicaid program.

Second, the Board concluded that plaintiff had a right to believe that the information provided to her by DSW was intended to be acted upon. Further, it found that DSW intended plaintiff to act upon the advice she received during the conversation that she had with the DSW employee. The Secretary did not find error in this conclusion, nor do we.

Third, the Board found that plaintiff did not have all the facts because she did not know that she was required to pay her excess resources toward outstanding medical bills to be eligible for retroactive Medicaid benefits. There is no dispute regarding this conclusion.

Finally, the Board concluded that plaintiff relied to her detriment on the information given to her by DSW. Plaintiff followed the "advice" of the eligibility specialist and made no payments on the $2,411.28 in medical expenses incurred prior to their conversation. As a result, plaintiff became ineligible for benefits for the months of March through July of 1990 and still has $2,411.28 in outstanding medical expenses from this period.

The Secretary disagreed, concluding that plaintiff did not rely on the conduct of DSW. Based on the Board's findings, he noted that the intake worker advised plaintiff to wait to make payments until she learned whether she met the disability criteria for Medicaid eligibility. The Secretary then concluded that plaintiff "did not do what the worker advised. Instead of wait-

ing until the Disability Determination Unit made a decision on her Medicaid eligibility as her DSW worker advised, [plaintiff] went out and spent $2,550.00." If plaintiff had followed the DSW worker's advice, the Secretary decided that she would have been eligible for retroactive benefits. He found, however, that plaintiff relied instead on advice from the Area Agency on Aging advocate that she needed to spend her resources down to the $2,000 eligibility limit. The Secretary concluded that plaintiff failed to qualify for retroactive benefits because she followed the advocate's advice rather than the advice of the DSW worker.

We believe that the findings of fact accepted by the Secretary do not support his conclusion. The Board found that plaintiff had $2,411.28 in doctors' bills at the time she spoke with the DSW eligibility specialist who told her not to make payments until a disability determination was made. Further, it found that plaintiff did not pay those bills at any time after this conversation. It follows that plaintiff relied on the worker's advice.

We agree with the Secretary that plaintiff relied on the advocate's advice when she spent her resources down to meet the eligibility limit. Nevertheless, we note that, consistent with the DSW worker's advice, she did not spend any of her excess on the $2,411.28 in outstanding doctors' bills. Plaintiff followed the advice of both the DSW worker and the advocate. The Board's findings indicate, however, that if plaintiff "had been told on July 9 that she needed to pay her medical expenses to be eligible for May, June and July, she would have paid those expenses immediately instead of buying the car or making the other expenditures." We conclude that the Secretary erred in ruling that plaintiff did not rely on the DSW worker's advice.

Accordingly, we hold that plaintiff has satisfied the elements of estoppel and is thus eligible for Medicaid pursuant to the Board's decision.

*Reversed. Decision of the Human Services Board is reinstated.*

**Peck, J.,** dissents without opinion.