# Lorraine Brisson v. Department of Social Welfare

[702 A.2d 405]

No. 96-427

Present: **Gibson, Morse and Johnson, JJ., and Cashman, D.J., and Allen, C.J. (Ret.), Specially Assigned**

Opinion Filed September 19, 1997

*Barbara Prine,* Vermont Legal Aid, Inc., Burlington, for Appellant.

*Donelle Smith Staley,* Assistant Attorney General, Waterbury, for Appellee.

**Johnson, J.** Petitioner Lorraine Brisson appeals from the Secretary of Human Services's order denying Medicaid funding for a closed-circuit television (CCTV). Brisson argues that a CCTV meets the Medicaid definition of "eyeglasses" and that the Secretary's denial of coverage for a CCTV is inconsistent with federal Medicaid requirements. We agree and reverse the Secretary's order.

Brisson applied to the Department of Social Welfare (DSW) for funding for a CCTV. The Department denied Medicaid coverage after determining that a CCTV does not qualify as durable medical equipment, is not a prosthetic device, and is not within the scope of covered vision-care services. The Human Services Board reversed and awarded funding, determining that a CCTV is a covered prosthetic device. The Secretary of Human Services, while accepting the Board's findings of fact, reversed the Board's decision and denied coverage on the ground that CCTVs are not within the scope of covered vision care. This appeal followed.

Brisson argues (1) that Vermont has opted to provide Medicaid coverage for eyeglasses; (2) that CCTVs qualify as eyeglasses under the Medicaid Act; and (3) that the Secretary's refusal to provide funding for CCTVs as eyeglasses is impermissible under federal law. DSW agrees that providing eyeglasses is an optional service, but it argues that the Secretary is entitled to define the scope of coverage for optional services.

Brisson is eligible to receive Medicaid benefits because her age and low income entitle her to be classified as "categorically needy." See 42

U.S.C. § 1396a(a)(10)(A) (1988). She lives independently and, among other conditions, suffers from macular degeneration, a retinal disorder destroying all but her peripheral vision. She is legally blind and can read only if print is magnified to at least eight times its normal size. Her doctors prescribed a CCTV as a medically necessary prosthetic. She uses one currently on loan to help her read medical labels and legal documents, follow directions on food preparation, and pay her bills. Without a CCTV, Brisson would need to live in a nursing home or have full-time home health care.

Medicaid is a cooperative enterprise between federal and state governments to help states provide health care to people otherwise unable to afford it. See *Stevens v. Department of Social Welfare*, 159 Vt. 408, 412-13, 620 A.2d 737, 739 (1992). The federal government reimburses participating states for a percentage of the cost of such care, *id.* at 413, 620 A.2d at 739, and while no state is required to participate in Medicaid, those that do must operate in compliance with federal statutory and regulatory requirements. See *Alexander v. Choate*, 469 U.S. 287, 289 n.1 (1985).

Participating states must, in particular, provide the "categorically needy," those persons most in need of financial assistance, with certain broad categories of medical assistance. See 42 U.S.C. § 1396a(a)(10) (requiring states to provide the medical assistance set forth in § 1396d(a)(1-5), (17) and (21)); *Meyers v. Reagan*, 776 F.2d 241, 243 (8th Cir. 1985). The states may also, at their option, provide the "categorically needy" with additional services. See 42 U.S.C. § 1396a(a)(10) (permitting states to provide "medical assistance"); *id.* § 1396d(a) (defining "medical assistance"). If a state chooses to provide optional services, "it is bound to act in compliance with the [Medicaid] Act and the applicable regulations in the implementation of those services." *Weaver v. Reagen*, 886 F.2d 194, 197 (8th Cir. 1989). Each service that a state provides, whether required by federal law or at the state's option, "must be sufficient in amount, duration, and scope to reasonably achieve its purpose." 42 C.F.R. § 440.230(b).

States may, at their option, provide coverage for eyeglasses, see 42 U.S.C. § 1396d(a)(12), and Vermont has chosen to provide such Medicaid coverage. See 5 Code of Vermont Rules, Medicaid Manual § 670. DSW argues, however, that CCTVs do not fall within the scope of Vermont's eyeglass service.

Brisson counters that, to the extent the Secretary's construction of the state's Medicaid rule fails to provide coverage for CCTVs while covering eyeglasses, it conflicts with federal law and is therefore

invalid. Brisson first argues that CCTVs meet the federal definition of eyeglasses. Federal regulations define "eyeglasses" as "lenses, including frames, and *other aids to vision* prescribed by a physician skilled in diseases of the eye or an optometrist." 42 C.F.R. § 440.120(d) (emphasis added). DSW concedes that a CCTV, as an aid to vision, falls within the scope of the federal definition of eyeglasses.

Brisson next argues that Vermont's refusal to provide coverage for a CCTV limits the amount, duration and scope of its eyeglasses and vision-care service to an extent that defeats the purpose of providing the service and is therefore impermissible under the federal regulations.

■ Initially, DSW contends that it provides coverage of eyeglasses that is sufficient to achieve *its* purpose to improve the vision of most Medicaid recipients at a reasonable cost to the citizens of Vermont. It is not the state's purpose in providing eyeglasses that controls, however. See *White v. Beal*, 413 F. Supp. 1141, 1153 (E.D. Pa. 1976) ("It is virtually unthinkable that the [federal regulations] would give the state virtually unbridled discretion in the form of such a 'loophole.'"), *aff'd*, 555 F.2d 1146 (3d Cir. 1977). DSW must provide the amount, duration and scope of eyeglasses care that will achieve the *federal* purpose: to aid or improve vision. *Id.*; *Simpson v. Wilson*, 480 F. Supp. 97, 102 (D. Vt. 1979).

■■ We recognize that states have wide latitude in determining the extent of medical services they offer under their Medicaid programs. See *Beal v. Doe*, 432 U.S. 438, 444 (1977). Moreover, a medical service is sufficient in amount, duration and scope if it is "'adequate to service the needs of *most* of the individuals eligible for Medicaid assistance.'" *Charleston Mem'l Hosp. v. Conrad*, 693 F.2d 324, 330 (4th Cir. 1982) (quoting *Curtis v. Taylor*, 625 F.2d 645, 653, *modified on other grounds*, 648 F.2d 946 (5th Cir. 1980)). Nevertheless, when a state chooses to provide an optional service, "the service must be distributed in a manner which bears a rational relationship to the underlying federal purpose of providing the service to those in *greatest* need of it." *White*, 555 F.2d at 1151 (emphasis added). DSW's willingness to provide coverage for lenses and frames and not for CCTVs fails to provide Medicaid service to those in greatest need of it. In contrast to eyeglasses, CCTVs are designed for use by the legally blind. For patients like Lorraine Brisson who suffer from macular degeneration, which destroys all but their peripheral vision, a CCTV is a necessity. Ordinary magnifying equipment does not

enlarge print to a sufficient size and clarity to allow such patients to read; CCTVs are the only available treatment. In light of the evidence that, absent a CCTV, Lorraine Brisson would be confined to a nursing home, providing a CCTV is at least as medically necessary as providing traditional eyeglasses.

■ The federal regulations provide that states "may place appropriate limits on a service based on such criteria as medical necessity." 42 C.F.R. § 440.230(d). DSW has failed, however, to demonstrate any justification for its refusal to provide coverage for CCTVs grounded in "medical necessity." Instead, it complains that providing CCTVs wherever medically necessary would cost too much; it argues that it would still be serving the needs of most Medicaid recipients if it denied coverage of CCTVs. DSW's position is untenable.

States may restrict coverage as a matter of fiscal necessity. See *Alexander*, 469 U.S. at 303 (restricting coverage because of fiscal necessity permissible provided consistent with recipients' best interest); see also *Curtis*, 625 F.2d at 652 (restrictions permitted where services met needs of most recipients because restrictions consistent with medical necessity). In this case, however, the Board found that without a CCTV Lorraine Brisson would require full-time, Medicaid-covered nursing care. It is uncontested that a CCTV would cost as much as 123 hours of nursing care and that the CCTV would remain useful for a much longer period of time. DSW cannot credibly maintain that coverage is too expensive where providing a CCTV would be fiscally expedient and would maintain the recipient's ability to live independently. See 42 U.S.C. § 1396; *Beal*, 432 U.S. at 453 (Brennan, J., dissenting) (state cannot justify "medical necessity" restriction as protecting fiscal interests, where restriction ultimately causes greater expenditures).

■ Finally, DSW argues that the Secretary's interpretation of the state's Medicaid rules is entitled to deference. The relevant issue, however, is not the Secretary's interpretation of the state's Medicaid rules, but whether such interpretation is contrary to federal law. See *Bacon v. Lascelles*, 165 Vt. 214, 218-19, 678 A.2d 902, 905 (1996) (policy justifications for deference, such as agency expertise and familiarity with purpose of regulation, missing when agency not interpreting its own regulation). DSW's argument is without merit.

*Reversed; the order of the Human Services Board is reinstated.*