440 F.3d 53
 Anne ROACH and William Roach, Plaintiffs-Appellees,
v.
James MORSE, in his official capacity as Commissioner of the Vermont Department for Children and Families, Marybeth McCaffrey,* in her official capacity as the Healthcare Policy Analyst for the Vermont Department for Children and Families and Ann Hastings, in her official capacity as the Case Review Supervisor of the Barre District Office of the Vermont Department for Children and Families and Vermont Department for Children and Families, Defendants-Appellants.
Docket No. 05-2277CV.
 United States Court of Appeals, Second Circuit.
 Argued: December 20, 2005.
 Decided: March 3, 2006.
 
 Seth A. Steinzor, Assistant Attorney General, State of Vermont (Susan R. Harritt, Assistant Attorney General, on the brief), Waterbury, Vermont, for Defendants-Appellants.
 Mark L. Tapper, Tapper Law Offices (Fletcher D. Proctor, on the brief), Springfield, Vermont, for Plaintiffs-Appellees.
 Before: SOTOMAYOR and WESLEY, Circuit Judges, and KAPLAN, District Judge.**
 SOTOMAYOR, Circuit Judge.
 
 
 1
 Defendants-appellants James Morse, the Commissioner of the Vermont Department for Children and Families, and various Department officials (collectively, the "State") appeal from the entry of a permanent injunction prohibiting the State from requiring plaintiffs-appellees Anne and William Roach (collectively, "plaintiffs") to answer certain questions posed on Vermont Medicaid form ESD 202 LV. The answers to these questions would require plaintiffs to disclose "the purpose for which William Roach made a loan to his daughter and son-in-law, the method they used to determine the duration of the loan, [and] . . . why the parties are unwilling to make the loan negotiable." Roach v. Morse, 1:05-cv-6, slip. op. at 14 (D.Vt. Apr. 13, 2005). We hold that (1) plaintiffs' failure to exhaust state administrative remedies under the Medicaid Act does not bar their claim under 42 U.S.C. § 1983, and (2) there is no evidence that the challenged questions create a more restrictive methodology than that used by the federal supplemental security income program ("SSI") in violation of 42 U.S.C. § 1396a(a)(10)(C)(i)(III) (2000).
 
 BACKGROUND
 
 2
 Plaintiff-appellee Anne Roach is a resident of the Woodbridge Nursing Home, the cost of which is approximately $6,000 per month. Shortly before plaintiff-appellee William Roach ("Mr.Roach") applied for Medicaid to pay for his wife's nursing home care, he loaned $287,000 to the couple's daughter and son-in-law, Sheila and Robert Rice. The loan instrument provides that the Rices will repay the loan at three percent interest per year, in monthly installments of $717.50, beginning on January 1, 2005, and continuing until December 1, 2007. At that point, the Rices are to repay the balance of the loan with interest. The loan instrument further provides that the loan obligation is not assignable by either party and that Mr. Roach, the holder of the note, can declare the remainder of the debt due at any time. The loan is secured by a second mortgage on the Rice's home in Essex, Vermont.
 
 
 3
 Mr. Roach disclosed the loan's existence when he filed an application for Medicaid to pay for the costs of his wife's long-term care. In response, the Vermont Department for Children and Families, which administers Vermont's Medicaid program, sent him form ESD 202 LV, which seeks a variety of information about an applicant's assets, including complete documentary evidence concerning any loans and verification of loan payments if any have been paid. The challenged questions ask applicants to provide: (1) an "[a]ffidavit from the obligor specifying how the duration of the loan was determined;" (2) an "[a]ffidavit from the obligor explaining the purpose/need for the loan and supporting documentation;" and (3) "[f]or any loan that is not negotiable or assignable, please include an affidavit of whether the parties are willing to change the terms to permit the loan obligation to become negotiable/assignable. If not, please explain why not."
 
 
 4
 Mr. Roach refused to answer these three questions and instead filed this suit under 42 U.S.C. § 1983, arguing that the questions violate 42 U.S.C. § 1396a(a)(10)(C)(i)(III), which requires that states that extend Medicaid coverage to certain categories of claimants use a methodology for determining eligibility that is no more restrictive than that used by the federal SSI program. He sought an injunction forbidding the state from forcing him to answer the questions or forfeit the Medicaid application for his wife's care.
 
 
 5
 The district court denied plaintiffs' motion for a preliminary injunction. The State then moved to dismiss the suit and the court held an evidentiary hearing on plaintiffs' motion for a permanent injunction. On April 13, 2005, the district court granted the State's motion to dismiss the Department for Children and Families as a defendant on the grounds of sovereign immunity but otherwise denied the motion to dismiss. On plaintiffs' motion for a permanent injunction, the district court rejected the State's assertion that plaintiffs' claim was premature because they had not exhausted their administrative remedies through the State's fair hearing process. Morse, slip. op. at 6-9.
 
 
 6
 Turning to the question of whether the challenged questions were more restrictive than the SSI methodology, the district court held that the State is limited to determining whether the transfer was bona fide and whether it was transferred for fair market value. Relying on the Social Security Administration's Program Operations Manual System ("POMS") governing eligibility for SSI, the district court concluded that the State "cannot inquire further of the applicant if the transaction is determined not to be a gift and the applicant receives fair market value" for the transfer. Id. at 9-10. The district court held that the loan at issue was enforceable under Vermont law and, according to actuarial tables, would be repaid within Mr. Roach's lifetime. In consequence, it held that the loan was a bona fide loan for fair market value and that Mr. Roach's intent in making the loan was not relevant for determining his wife's eligibility for Medicaid. Id. at 12. The district court then concluded that the three disputed questions on form ESD 202 LV create a more restrictive methodology than the SSI methodology in violation of § 1396a(a)10(C)(i)(III) and permanently enjoined the State from requiring plaintiffs to respond to the challenged questions. Id. at 14.
 
 
 7
 On appeal, the State contends that the district court erred in failing to require that plaintiffs exhaust their administrative remedies by answering the questions and requesting a fair hearing before the Vermont Human Resources Board if they subsequently were denied Medicaid. With respect to the merits, the State argues that the SSI POMS permits inquiry into the negotiability and feasibility of an informal cash loan, such as the one at issue here, and that the challenged questions are not, by themselves, more restrictive than the methodology used to determine SSI eligibility. Finally, the State argues that there is no evidence that Mr. Roach's answers to the disputed questions would necessarily result in a denial of Medicaid as long as the loan was otherwise bona fide and for fair market value.
 
 DISCUSSION
 
 8
 This Court reviews the entry of a permanent injunction for abuse of discretion. Shain v. Ellison, 356 F.3d 211, 214 (2d Cir.2004). A district court abuses its discretion in entering an injunction when it relies on clearly erroneous findings of fact or an error of law. S.C. Johnson & Son, Inc. v. Clorox, Co., 241 F.3d 232, 237 (2d Cir.2001); Rodriguez v. City of New York, 197 F.3d 611, 614 (2d Cir.1999). We review questions of statutory interpretation de novo. See Auburn Hous. Auth. v. Martinez, 277 F.3d 138, 143 (2d Cir.2002). To obtain a permanent injunction, a plaintiff must succeed on the merits and "show the absence of an adequate remedy at law and irreparable harm if the relief is not granted." N.Y. State Nat'l Org. for Women v. Terry, 886 F.2d 1339, 1362 (2d Cir.1989) (citing Rondeau v. Mosinee Paper Corp., 422 U.S. 49, 57, 95 S.Ct. 2069, 45 L.Ed.2d 12 (1975)).
 
 
 9
 * The State contends that the district court abused its discretion in not requiring the plaintiffs to exhaust their administrative remedies by seeking relief through the State's fair hearing process. Plaintiffs suing under 42 U.S.C. § 1983 generally need not exhaust their administrative remedies. See Patsy v. Bd. of Regents, 457 U.S. 496, 516, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). In Patsy, the Supreme Court explained that the Civil Rights Act of 1871, the precursor of § 1983, assigned federal courts a "paramount" role in protecting federal rights, id. at 503, 102 S.Ct. 2557, and was intended "to provide dual or concurrent forums in the state and federal system," id. at 506, 102 S.Ct. 2557. Accordingly, exhaustion is necessary only where Congress specifically requires it, either explicitly or implicitly. See Heck v. Humphrey, 512 U.S. 477, 483, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994); Doe v. Pfrommer, 148 F.3d 73, 78 (2d Cir.1998) ("Patsy's categorical statement that exhaustion is not required and the expansive view of federal courts in protecting constitutional rights allow plaintiffs to seek relief under § 1983 without first resorting to state administrative procedures.") (citing DeSario v. Thomas, 139 F.3d 80, 85-86 (2d Cir.1998), vacated on other grounds sub nom. Slekis v. Thomas, 525 U.S. 1098, 119 S.Ct. 864, 142 L.Ed.2d 767 (1999)). The Medicaid Act does not explicitly require exhaustion of state administrative remedies,[1] but the State asserts that Congress has implicitly required such exhaustion by conditioning state participation in the Medicaid program on a state's creation of an administrative review process.
 
 
 10
 The Medicaid Act requires states that participate in the program to "provide for granting an opportunity for a fair hearing before the State agency to any individual whose claim for medical assistance under the plan is denied or is not acted upon with reasonable promptness." 42 U.S.C. § 1396a(a)(3). In accordance with this provision, Vermont provides that an applicant for Medicaid assistance may file a request for a fair hearing and that a hearing will be granted:
 
 
 11
 to any individual requesting a hearing because his or her claim for assistance, benefits or services is denied, or is not acted upon with reasonable promptness; or because the individual is aggrieved by any other agency action affecting his or her receipt of assistance, benefits or services, or license or license application; or because the individual is aggrieved by agency policy as it affects his or her situation.
 
 
 12
 VT STAT ANN. tit. 3 § 3091(a). There is no question that plaintiffs could have pursued the relief they seek through the State's fair hearing process. See Stevens v. Dep't of Soc. Welfare, 159 Vt. 408, 620 A.2d 737, 742 (1992) (holding that the legislature intended the Human Services Board to hear any case in which an individual is aggrieved by a Department of Social Welfare order or policy); VT STAT ANN. tit. 3 § 3091.
 
 
 13
 Because § 1983 is intended to provide a federal forum, however, there will almost always be "some sort of administrative or judicial avenue of relief at state law—whether compelled by federal statute or simply available under general state court jurisdiction." Alacare, Inc.-North v. Baggiano, 785 F.2d 963, 967-68 (11th Cir. 1986). We have thus held that a congressional requirement that states establish administrative review procedures does not imply that § 1983 plaintiffs need exhaust them. See, e.g., Pfrommer, 148 F.3d at 78; see also Houghton ex. rel Houghton v. Reinertson, 382 F.3d 1162, 1167 n. 3 (10th Cir.2004) (holding that a § 1983 plaintiff need not exhaust state administrative remedies prior to bringing a claim under the Medicaid Act); Alacare, Inc.-North, 785 F.2d at 970 (same); Talbot v. Lucy Corr Nursing Home, 118 F.3d 215, 220 (4th Cir.1997) (finding that § 1983 plaintiffs are not required to exhaust state remedies under the Medicare Act pursuant to the reasoning of Alacare). In Pfrommer, for example, we examined whether a plaintiff had to exhaust his state administrative remedies before bringing a § 1983 claim claiming an alleged violation of Title I of the Rehabilitation Act of 1973, 29 U.S.C. §§ 720-753a, which provides grants to assist states in preparing individuals with disabilities for gainful employment. Like Medicaid, Title I requires that states obtaining federal funds "shall establish procedures for mediation of, and procedures for review through an impartial due process hearing of, determinations made by personnel of the designated State unit that affect the provision of vocational rehabilitation services to applicants or eligible individuals." 29 U.S.C. § 722(c). We held that this provision did not contain "the explicit or implicit language that would require an aggrieved party to first pursue all administrative remedies prior to instituting an action in federal court." Pfrommer, 148 F.3d at 78.
 
 
 14
 The State relies on Skubel v. Fuoroli, 113 F.3d 330 (2d Cir.1997), to argue that this Court has required exhaustion in the Medicaid context.[2] Skubel, however, is inapposite. In Skubel, the plaintiffs sued state and federal defendants challenging a federal Department of Health and Human Services ("HHS") regulation limiting Medicaid funding for home health service to services provided in the recipient's home. Id. at 333. They claimed that the regulation was an unreasonable interpretation of the Medicaid statute in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 500 et seq., and the Rehabilitation Act of 1973, 29 U.S.C. § 794, and denied them equal protection under the Fifth and Fourteenth Amendments to the Constitution. Id. Although the plaintiffs had been denied the health care services they sought outside their homes and had exchanged several letters about the regulation with HHS and the Connecticut Department of Social Services, which administered the Medicaid program, the plaintiffs had not petitioned HHS to engage in a new rulemaking process. Id. We observed that where a plaintiff challenges a federal regulation under the APA, "the rule of exhaustion normally requires that the plaintiff petition the agency for a rulemaking." Id. at 334. We held that the district court properly exercised its discretion in excusing the plaintiffs' failure to exhaust, however, because it was clear from the defendants' letters that the agency had taken a firm stand against changing the challenged rule. Id. at 334-45. We did not suggest in Skubel that a litigant who does not challenge the validity of a rule under the APA is required to exhaust a state's fair hearing process before litigating under § 1983.
 
 
 15
 Plaintiffs here do not bring a claim under the APA, nor do they seek a new administrative rule from a federal agency. Because the language of the Medicaid Act does not explicitly or implicitly require exhaustion of state remedies before a litigant sues under § 1983, we find no error in the district court's refusal to require plaintiffs to exhaust Vermont's fair hearing process.
 
 II
 A.
 
 16
 The Medicaid program in which Vermont participates is a joint federal-state cost-sharing program to provide medical assistance to people whose income and resources are insufficient to cover the cost of necessary medical care. See 42 U.S.C. § 1396. The statutory scheme governing the Medicaid program is "of `unparalleled complexity.'" Camacho v. Perales, 786 F.2d 32, 38 (2d Cir.1986) (quoting DeJesus v. Perales, 770 F.2d 316, 321 (2d Cir.1985)). The Medicaid program requires states that participate to cover the cost of care for the "categorically needy," which the statute defines as those individuals who are unable to cover the costs of their basic needs and already receive or are eligible for certain forms of public assistance. See Lewis v. Thompson, 252 F.3d 567, 570 (2d Cir.2001). The program also allows states to cover the costs of care for the "medically needy," which the statute defines as people who have income and resources to cover the costs of their basic needs but not their necessary medical care. See 42 U.S.C. § 1396a(a)(10)(C); 42 C.F.R. § 435.301; Camacho, 786 F.2d at 33-34. Vermont has elected to extend Medicaid coverage to the medically needy and has elected also to have the federal Commissioner for Social Security determine the Medicaid eligibility for those persons who are eligible for both SSI and Medicaid. 42 U.S.C. § 1383c(a). Accordingly, Vermont must employ a methodology for determining Medicaid eligibility for medically-needy applicants that is "no more restrictive than the methodology which would be employed under the supplemental security income [SSI] program." 42 U.S.C. § 1396a(a)(10)(C)(i)(III).
 
 
 17
 The term "methodology" is not defined in the Act, but we have held that, as used in the Act, it refers to "such matters as the identification of relevant factors, the manner of treating or applying the relevant standards, and the manner of or procedure for setting or selecting the standards chosen."[3] Camacho, 786 F.2d at 43. The Act does define "no more restrictive," however, and provides that a "methodology is considered to be `no more restrictive' if, using the methodology, additional individuals may be eligible for medical assistance and no individuals who are otherwise eligible are made ineligible for such assistance." 42 U.S.C. § 1396a(r)(2)(B). Hence, to succeed in their claim, plaintiffs must show that Vermont's Medicaid methodology renders them ineligible for benefits for which they would be eligible under the SSI methodology. We thus turn to the SSI methodology for determining eligibility.
 
 
 18
 Eligibility for SSI is based, in significant part, upon an applicant's income and resources. See 42 U.S.C. § 1382; 20 C.F.R. § 416.1100. With certain exceptions not relevant here, resources for purposes of SSI include "cash and any other personal property, as well as any real property, that an individual (or spouse, if any) owns." 20 C.F.R. § 416.1201(a). Property other than cash will be considered a resource "[i]f the individual has the right, authority or power to liquidate the property or his or her share of the property." Id. § 416.1201(a)(1). Under both Vermont Medicaid and SSI regulations, a loan may be considered a resource of the lender. See id. § 416.1201(b)-(c); 13-17-008 VT. CODE R. § M231.2. According to the SSI POMS, which we have held is persuasive authority in determining how the Social Security Administration interprets the law, Bubnis v. Apfel, 150 F.3d 177, 181 (2d Cir.1998), a loan is considered to be a resource of the lender valued at the outstanding principal balance if it "is a negotiable, bona fide loan." POMS § SI 01120.220(B)(2)(a). A loan is negotiable if it is assignable on its face; it is bona fide if it is legally valid and made in good faith. See id. § SI 01120.220(A). A loan is not considered a resource of the lender if it is not negotiable, meaning that it is not assignable. See id. § SI 01120.220(B)(2)(b).
 
 
 19
 Where, as here, the parties are not in the business of lending money, SSI considers the loan to be "informal." Id. § SI 01120.220(C). An informal loan will be considered bona fide where it is enforceable under state law, it is in effect at the time the transfer is made to the borrower, there is an acknowledgment of an obligation to repay, there is a plan for repayment, and the repayment plan is feasible. Id. Neither the POMS nor the regulations define what it means for a repayment plan to be feasible, but the POMS instructs application reviewers to consider the amount of the loan, as well as the borrower's income and living expenses.[4] See id. Where the applicant is the lender, the application reviewer is to assume that the agreement is negotiable—and thus a resource —unless the applicant raises an issue of non-negotiability and can rebut the presumption that the loan is negotiable. Id. § SI 01120.220(D)(3)(b).
 
 
 20
 SSI and Vermont's Medicaid regulations also provide for a 36-month "look back" period, during which an applicant may be penalized for any transfers made for the purpose of qualifying for SSI or Medicaid. See 42 U.S.C. § 1382b(c)(1)(A)(i); 13-170-008 VT. CODE R. §§ M440-M440.21. A transfer of resources, such as a non-negotiable loan, for less than fair market value during this period is presumed to have been made for the purpose of qualifying for Medicaid. See 20 C.F.R. § 416.1246(e). An applicant may rebut this presumption, however, by showing, for example, that he or she transferred the resource exclusively for another reason. See id. In sum, the methodology for determining whether a loan is a resource of an applicant for purposes of SSI eligibility inquires into whether the loan is negotiable, for fair market value, and legally enforceable, as well as the feasibility of the repayment plan.
 
 B.
 
 21
 The questions posed by Vermont in form ESD 202 LV address the same general factors as those considered by the federal government in determining SSI eligibility. They go beyond the specific questions asked pursuant to the SSI methodology, however, insofar as they inquire into the parties' reasons for structuring the loan as they did. Where an applicant's documents are complete on their face, the questions posed by Vermont are more burdensome and intrusive than those used to determine SSI eligibility. Plaintiffs argue that this inquiry beyond the face of the documents creates a more restrictive methodology within the meaning of § 1396a(a)(10)(C)(i)(III). They rely on POMS § SI 01150.005(E)(6), which instructs SSI application reviewers that if a resource transfer is for fair market value, "the issue of the transfer is closed and the ineligibility period does not apply."
 
 
 22
 There is no question that Vermont's questions are more searching than those of the POMS. The POMS does permit claims reviewers, however, to go beyond the face of financial documents in certain circumstances. As noted, the POMS provides that application reviewers should "develop" a loan to determine its resource value to the applicant, see POMS § SI 01120.220(D)(3)(b), and should look to the parties' subjective motivations in determining whether a transfer for less than fair market value was made for the purpose of qualifying for benefits. See 20 C.F.R. § 416.1246(e). Accordingly, the POMS does not prohibit a searching inquiry, but generally uses it only when documentation is insufficient. The searching nature of Vermont's inquiry thus does not necessarily create a more restrictive methodology because the POMS permits a searching inquiry in certain circumstances.[5]
 
 
 23
 Significantly, plaintiffs have not pointed to any evidence in the record that the State will deny their application for Medicaid on the basis of their answers to the questions if they satisfy the requirements that the loan is bona fide and for fair market value. The district court did not make any findings on whether any applicant in a position similar to that of the Roaches had been denied coverage on the basis of responses to the challenged questions.[6] Nor did it make any findings on what plaintiffs' answers will be or whether those answers will necessarily result in the denial of benefits for which plaintiffs would qualify under the SSI methodology. It is thus impossible for this Court to know whether Vermont's methodology will render plaintiffs ineligible for Medicaid.
 
 
 24
 For example, if Mr. Roach answers that he and the Rices are willing to make the loan negotiable, and they subsequently do so, the loan would be counted as a resource. If the loan is counted as a resource, Vermont would likely deny plaintiffs' application because they presumably would have too many resources to qualify for assistance. But SSI would also count the negotiable loan as a resource in these circumstances, and the Roaches would likely be ineligible for benefits under that program's methodology. The ESD 202 LV question with respect to whether the parties would consider making the loan negotiable does not necessarily create a more restrictive condition. If Vermont were to deny plaintiffs' Medicaid application on the basis of Mr. Roach's refusal to amend the loan agreement and make the loan negotiable, a court might find that the State is using a more restrictive methodology. But there is no evidence in the record that the State uses or would use such a methodology, and, if it did, why it would do so. Indeed, defendant-appellant Marybeth McCaffrey, whom plaintiffs called as a witness, testified that if the parties to the promissory note say they are unwilling to make it negotiable, "the department can't go any further." Because the challenged questions do not, by themselves, render any applicant ineligible for Medicaid who would be eligible for benefits under the SSI methodology, see 42 U.S.C. § 1396a(r)(2)(B), they do not create a more restrictive methodology in violation of § 1396a(a)(10)(C)(i)(III).
 
 CONCLUSION
 
 25
 For the foregoing reasons, we REVERSE the judgment of the district court in part, VACATE the permanent injunction, and REMAND the case for the entry of judgment dismissing the case.
 
 
 
 Notes:
 
 
 *
 The Clerk of the Court is requested to modify the official caption to reflect the correct spelling of defendant-appellant Marybeth McCaffrey's name
 
 
 **
 The Honorable Lewis A. Kaplan, United States District Judge for the Southern District of New York, sitting by designation
 
 
 [1]
 Cases cited by the State such asTaylor v. Vermont Department of Education, 313 F.3d 768 (2d Cir.2002), are therefore inapposite. The Individuals with Disabilities Education Act, 20 U.S.C. § 1400 et. seq., at issue in that case, has an express exhaustion requirement, see id. § 1415 (l) ("[B]efore the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter." (emphasis added)).
 
 
 [2]
 Although we have not previously discussed this issue with respect to the Medicaid Act, we note that none of our prior cases considering challenges to the application of Medicaid regulations pursuant to § 1983 have required plaintiffs to exhaust their state administrative remediesSee, e.g., Rodriguez v. City of New York, 197 F.3d 611 (2d Cir.1999) (considering plaintiffs' challenge to New York Medicaid regulations under 42 U.S.C. § 1396a(a)(10)(B) without discussing whether the plaintiffs had exhausted their state administrative remedies); Camacho v. Perales, 786 F.2d 32 (2d Cir.1986) (considering challenge to certain New York Medicaid regulations under 42 U.S.C. § 1396a(a)(10)(C)(i)(III) without discussing whether the plaintiffs had exhausted their state remedies).
 
 
 [3]
 As we explained inCamacho, "[t]he equation Benefit Level minus Countable Income = Amount of Benefits is ... an example of methodology because it governs the manner in which the benefit level (a standard) and the applicant's countable income (a defined fact) are to be treated." Id. at 44.
 
 
 [4]
 Vermont Medicaid regulations determine feasibility on the basis of whether the loan will be repaid in the lender's expected lifetime. 13-170-008 VT. CODE R. § M440.21
 
 
 [5]
 It is possible, of course, that the searching nature of the inquiry could create a more restrictive methodology in some circumstances. But we need not consider that issue here because the questions challenged in this litigation relate to factors well within the limits of those considered in determining eligibility for SSI
 
 
 [6]
 Plaintiffs appear to anticipate that, even if the $287,000 loan is bona fide, they will be denied Medicaid benefits because it was made for the purpose of qualifying for Medicaid. Because the State has not had a full opportunity to consider the Roaches' responses to form ESD LV 202 and to determine whether this is an issue, plaintiffs are asking for an advisory opinion and we do not address their concern