The STOP & SHOP SUPERMARKET COMPANY LLC, Plaintiff–Appellee,

v.

UNITED FOOD AND COMMERCIAL WORKERS UNION LOCAL 342, AFL–CIO, CLC, Defendant–Appellant.

No. 06–2639–cv.

United States Court of Appeals, Second Circuit.

June 13, 2007.

Richard Reice, Seyfarth Shaw LLP (Paul Galligan, on the brief), New York, for Plaintiff–Appellee.

Carey R. Butsavage, Butsavage & Associates, P.C., Washington, D.C. (Philip J. Rizzuto, Law Offices of Phillip J. Rizzuto, Carle Place, New York, on the brief), for Defendant–Appellant.

1. The District Court's decision in *Stop & Shop Supermarket Co.*, 407 F.Supp.2d 515, is not part of this appeal. Accordingly, this opinion

PRESENT: Hon. PIERRE N. LEVAL, Hon. CHESTER J. STRAUB, Hon. RICHARD C. WESLEY, Circuit Judges.

### SUMMARY ORDER

Defendant–Appellant United Food and Commercial Workers Union Local 342, AFL–CIO, CLC ("Union") appeals from the May 1, 2006 order of the United States District Court for the Southern District of New York (Leonard B. Sand, *Judge*), granting in part the motion for injunctive relief filed by Plaintiff–Appellee The Stop & Shop Supermarket Company LLC ("Stop & Shop" or "Employer"), and designating an arbitrator to conduct the parties' pending arbitration. The Union also appeals the District Court's subsequent orders, which appointed another arbitrator when the first-named arbitrator declined to serve. Because the District Court had the authority to appoint an arbitrator under § 5 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 5, and properly exercised that authority here, we affirm.

This dispute arises out of arbitration proceedings that commenced after the District Court determined that the Union's grievance concerning Stop & Shop's implementation of a computerized labor management system ("LMS") was properly the subject of arbitration under the parties' collective bargaining agreement ("CBA"). *See Stop & Shop Supermarket Co., LLC v. United Food & Commercial Workers' Union Local 342*, 407 F.Supp.2d 515 (S.D.N.Y.2005).[1] The CBA contained an arbitration provision, which specified the manner in which the arbitrator was to be selected:

(i) All Arbitration cases will be heard by an arbitrator selected from a panel of

should not be construed as expressing any views on the merits of that decision.

arbitrators. The Union and the Employer will rotate the selection of arbitrators. Both parties shall submit a list of four arbitrators and these arbitrators shall comprise the panel of arbitrators to be utilized to hear and decide disputes. Either side may add to or delete from the panel with sixty (60) days notice to the other side. All panel arbitrators must be members of the American Arbitration Association and/or the National Academy of Arbitrators. The panel of arbitrators shall hear cases on a rotating basis.

(ii) The Union or the [E]mployer may notify the other party of its intent to arbitrate after the third (3) step [of the grievance procedure], and such notice shall be in writing. The [E]mployer agrees that an arbitration must be commenced within sixty (60) calendar days from the date either party notifies the other of its intent to arbitrate an issue, except by mutual written consent of the [E]mployer and the Union to extend the sixty (60) day calendar period. The aggrieved party will notify the panel arbitrator who is up next to hear the case, except that if the next arbitrator up cannot hear the cases within sixty (60) days, then the arbitrator shall be the next name from the arbitrator panel of the party who[se] turn it was to select the arbitrator. If each side exhausts its pick for an arbitrator to hear its case, then whichever side was up can request a non-panel arbitrator that is a member of the American Arbitration Association and/or the National Academy of Arbitrators.

As it was the Union's turn to select the arbitrator, it designated one of the arbitrators on its panel, John Kennedy, to conduct the LMS arbitration. Stop & Shop objected to Kennedy's designation, however, asserting that he was not a member of the American Arbitration Association or the National Academy of Arbitrators and therefore lacked the necessary qualifications to serve as arbitrator. Shortly thereafter, the Union notified Stop & Shop that it was replacing Kennedy with another member of the Union's panel, Elliott Shriftman. Shriftman, without objection from Stop & Stop, took over as arbitrator. After holding several days of hearings, however, Shriftman abruptly recused himself, explaining that a personal scheduling conflict precluded him from completing the arbitration within sixty days, which he believed was mandated by the CBA.

Following Shriftman's withdrawal, the Union notified Stop & Shop that it had designated Kennedy, who in the meantime had become a member of the AAA, to fill the vacancy. Stop & Shop refused to recognize Kennedy's reappointment, arguing that the Union had failed to give the requisite sixty-day notice prior to adding Kennedy back onto its panel, and, in any event, the Union had exhausted its picks for the position. Shop & Shop then designated its own arbitrator, Stanley Aiges, to hear the matter.

On April 25, 2006, some five months after the District Court had ordered the parties to arbitrate, Stop & Shop filed another action, this time to request the District Court to determine the appropriate arbitrator. Among other relief, Stop & Shop sought an injunction against the reappointment of Kennedy, and an order directing the parties to conduct the LMS arbitration before Aiges or some other arbitrator to be selected by Stop & Shop.

In an order issued May 1, 2006, 2006 WL 1148728, the District Court held that it had the authority, under § 5 of the FAA,

to designate an arbitrator to hear the LMS arbitration. The District Court then turned to the provisions of the CBA to determine who should be appointed. As a threshold matter, the District Court found that the CBA simply required the arbitrator "to *begin* hearing the case within sixty days of notification," and that contrary to Shriftman's stated belief, the agreement did not place any time restrictions on the length of the proceedings. Concluding that Shriftman had recused himself in error, the District Court directed the parties to resume the arbitration proceedings before Shriftman.

The District Court went on to analyze who should be appointed as arbitrator in the event that Shriftman did not agree to serve. Pointing to the language in the CBA stating that the successor arbitrator "shall be the next name from the arbitration panel [of the party who[se] turn it was to select the arbitrator]," the District Court decided that the next arbitrator had to come from the Union's panel, but that it could not be Kennedy "because with four members on the panel, it cannot be that ... after the selection of Shriftman to replace Kennedy it is again Kennedy's turn." The District Court thus ordered that in the case Shriftman proved unwilling to serve as arbitrator, "the Union shall designate the arbitrator following Shriftman on its panel."

Two days later, on May 3, 2006, the Union notified the District Court that Shriftman had declined to reassume his position as arbitrator. The Union also sought clarification of the May 1 order and claimed entitlement to appoint Kennedy. On May 30, following a hearing on the matter, the District Court entered an order appointing an existing member of the Union's panel, Stephen O'Beirne, to hear the LMS arbitration. This appeal followed.

We review a district court's issuance of an injunction for abuse of discretion. *See Ret. Sys. of Ala. v. J.P. Morgan Chase & Co.,* 386 F.3d 419, 425 (2d Cir.2004); *Ticor Title Ins. Co. v. Cohen,* 173 F.3d 63, 68 (2d Cir.1999). "A district court abuses its discretion in entering an injunction when it relies on ... an error of law." *Roach v. Morse,* 440 F.3d 53, 56 (2d Cir.2006). Determinations of law, such as the proper interpretation of a statute, are reviewed *de novo. See id.; see also Conn. Office of Prot. & Advocacy For Pers. With Disabilities v. Hartford Bd. of Educ.,* 464 F.3d 229, 236 (2d Cir.2006).

Section 5 of the FAA specifies the circumstances in which a district court may appoint an arbitrator. It provides:

> If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.

9 U.S.C. § 5. Here, it is undisputed that the parties provided "for a method of nam-

ing or appointing an arbitrator" in their agreement. Notwithstanding the existence of such a provision, a district court has the duty under FAA § 5 to step in and appoint an arbitrator if either of the following conditions pertains: (1) one party fails to avail itself of the contractual selection method, or (2) there is a lapse in the naming of the arbitrator.

At the time the District Court received this case, there was no clear arbitrator: Each party had designated its own pick, whom the other side refused to recognize as the legitimate arbitrator. Such a deadlock satisfies FAA § 5's requirement of a "lapse in the naming of an arbitrator." Accordingly, the District Court had the authority, and the obligation, under FAA § 5 to correct the breakdown in the selection process by "designat[ing] and appoint[ing] an arbitrator." *Id.; see, e.g., Pac. Reins. Mgmt. Corp. v. Ohio Reins. Corp.*, 814 F.2d 1324, 1327–28 (9th Cir. 1987) (holding that the district court acted within its authority under FAA § 5 in designating an umpire, even though seven of the parties' twelve contracts contained a selection method, where the parties' stalemate over whether that method should apply to the other five contracts resulted in a lapse in the naming of the umpire).

In enacting § 5 of the FAA, Congress anticipated that breakdowns in the arbitrator selection process might indefinitely delay arbitration proceedings, and sought to cure this problem by granting parties access to a neutral forum, the courts, to correct such failures. The District Court was presented with such a breakdown in this case, and it properly exercised its authority under FAA § 5 by appointing an arbitrator in a way that gave effect to the parties' agreement. Finding no error in the District Court's decisions, we affirm.

For the foregoing reasons, the orders of the District Court entered on May 1, 5, 10, and 30, 2006 are AFFIRMED.