# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**319**

**KA 12-01189**

PRESENT: SCUDDER, P.J., FAHEY, SCONIERS, AND MARTOCHE, JJ.

---

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

V                                                    OPINION AND ORDER

MICHAEL MIRAN, DEFENDANT-APPELLANT.
(APPEAL NO. 1.)

---

THE PARRINELLO LAW FIRM, LLP, ROCHESTER (BRUCE F. FREEMAN OF COUNSEL), AND CERULLI, MASSARE & LEMBKE, FOR DEFENDANT-APPELLANT.

ERIC T. SCHNEIDERMAN, ATTORNEY GENERAL, ALBANY (JODI A. DANZIG OF COUNSEL), FOR RESPONDENT.

--------------------------------------------------------------------------------

Appeal from a judgment of the Supreme Court, Monroe County (Richard A. Dollinger, A.J.), rendered October 15, 2010. The judgment convicted defendant, upon his plea of guilty, of offering a false instrument for filing in the second degree.

It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.

Opinion by FAHEY, J.: In appeal Nos. 1 through 3, defendants appeal from respective judgments convicting them of crimes related to Medicaid and Medicare fraud. In doing so, defendants raise the issues whether the Attorney General of the State of New York (hereafter, Attorney General) has authority under Executive Law § 63 (3) to prosecute defendants for crimes involving Medicare, and whether Executive Law § 63 (3) is preempted by 42 USC § 1396b (q) (3). For the reasons that follow, we agree with the People that Executive Law § 63 (3) empowers the Attorney General to prosecute crimes related to Medicare fraud in connection with an authorized investigation of Medicaid fraud. We further conclude that Executive Law § 63 (3) is not preempted by 42 USC § 1396b (q) (3), and we thus conclude that the judgment in each appeal should be affirmed.

I

Medicaid is a joint federal-state program established pursuant to what is astutely described as a scheme of "unparalleled complexity" (*Roach v Morse*, 440 F3d 53, 58 [internal quotation marks omitted]), embodied in title XIX of the Social Security Act (42 USC § 1396 *et seq.*) and implemented in this state by article 5, title 11 of the Social Services Law and 18 NYCRR subpart 360-4. Medicaid is a state-administered program, and the federal government reimburses the state

for a percentage of costs incurred in the proper and efficient administration of a Medicaid plan (*see* 42 USC § 1396b [a]; *see also Matter of Golf v New York State Dept. of Social Servs.*, 91 NY2d 656, 659).  Medicare, in turn, is a federal healthcare program for the aged and disabled, and is administered by the Department of Health and Human Services (42 USC § 1395 *et seq.*).

This case had its genesis in an investigation conducted by the Attorney General into defendants' submissions of false billing claims to both the state Medicaid office and the federal Medicare office. Briefly, defendant Michael Miran (Michael) is a clinical psychologist, and defendant Esta Miran (Esta) is his wife.  Defendant Michael Miran, Ph.D. Psychologist, P.C. (Corporation) is an entity that Michael and Esta co-founded, and through that body submitted false billing claims. The parties agree that the Corporation was a Medicare provider and, according to the People, Michael was an enrolled Medicaid provider.

Defendants' patients were so-called "dual eligibles," i.e., their indigent status entitled them to both Medicare and Medicaid coverage. Pursuant to an agreement between the state and federal governments, Medicare funded the majority of the medical costs for defendants' patients, and Medicaid paid the applicable copayment.  Defendants' medical billing agent billed Medicare for relevant services rendered and, after receiving payment from Medicare, charged Medicaid for the unpaid amount using the Medicaid billing code closest to the relevant Medicare billing code.

That practice eventually attracted the attention of state authorities.  On April 26, 2002, years before this investigation began, the Commissioner of Health (COH) requested that the Attorney General investigate and prosecute Medicaid fraud (hereafter, referral).  That referral provided as follows:

> "Pursuant to Executive Law § 63 (3), I hereby request that you investigate and prosecute the alleged commission of any indictable offense or offenses arising out of any violation of the Public Health Law, the Social Services Law or any other applicable state law or any regulation promulgated thereunder relating to: (1) fraud in the administration of the Medicaid program; (2) the provision of medical assistance and the activities of providers of medical assistance under the state Medicaid plan; (3) the abuse or neglect of patients in health care facilities receiving payments under the Medicaid plan or the misappropriation of patients' private funds in such facilities; and (4) the operation, management or funding of health-related entities and facilities subject to oversight by this Department . . .

> "In addition, I request that you prosecute any person or persons believed to have committed any

of the above crimes or offenses, and any crime or offense arising out of your investigation or prosecution or both, or properly joinable with the foregoing offenses in such prosecution . . ."[1]

Following the referral, the state Medicaid Fraud Control Unit (MFCU), which operates in the office of the Attorney General, commenced the subject investigation against defendants. At some point, the Attorney General learned of a simultaneous federal inquiry into defendants' activities by the Federal Bureau of Investigation (FBI) and Office of Inspector General (OIG) and, on April 21, 2006, the OIG acknowledged and granted the Attorney General's request to continue its adjudication of the matter.

The subject investigation yielded a 31-count indictment, which charged defendants with various crimes generally relating to false statements in the medical records of certain Medicaid and Medicare patients,[2] as well as the larcenous receipt of payment through false representations as to services provided to Medicaid and Medicare participants. Defendants thereafter moved for dismissal of the indictment on two grounds. By a motion in which Esta joined, Michael and the Corporation sought an order dismissing the indictment on the ground that the Attorney General "has not been authorized to investigate or prosecute the charges in the Indictment pursuant to Executive Law § 63 (3)." The People opposed the motion, contending that the Attorney General has jurisdiction to investigate and prosecute Medicaid fraud and related Medicare fraud based on the 1978 referrals of the COH and the CDSS, and the 2002 referral of the COH.

In a second motion to dismiss, defendants collectively sought "dismissal of the Indictment pursuant to the doctrine of Federal/State 'Conflict Preemption.' " Specifically, defendants contended that 42 USC § 1396b (q) (3) is the controlling federal statute that gives state MFCUs the power to investigate federal Medicare-related fraud to a limited extent. Defendants further contended that Executive Law § 63 (3) conflicts with 42 USC § 1396b (q) (3), and that section 63 (3) thus is nullified under the principle of conflict preemption. Defendants did not, however, contend that section 63 (3) is expressly preempted by 42 USC § 1396b (q) (3). In opposition to the second motion to dismiss, the People, inter alia, contended that no express or implied conflict exists between the statutes at issue.

---

[1]     The COH's 2002 referral appears to have updated a 1978 referral of the COH given the assumption by the Department of Health (DOH) of the duties as the single state agency administering the state's Medicaid program in 1996 (see L 1996, ch 474, §§ 233-248). The Commissioner of the Department of Social Services (CDSS) also referred to the Attorney General the issue of Medicaid fraud in 1978.

[2]     Medicaid fraud was the subject of 25 of the 31 counts of the indictment.

By separate orders, County Court (Marks, J.) denied both motions, reasoning that the People satisfied their burden of proof with respect to Executive Law § 63 (3) by producing the 1978 and 2002 referrals of the COH and CDSS requesting that the Attorney General investigate and prosecute Medicaid fraud and rejecting defendants' contention with respect to preemption.  The day after County Court denied the second motion to dismiss, the parties appeared before Supreme Court (Dollinger, A.J.) and entered respective guilty pleas, each in full satisfaction of the indictment.  Specifically, Michael pleaded guilty to offering a false instrument for filing in the second degree (Penal Law § 175.30), a lesser included offense of the indicted crime of offering a false instrument for filing in the first degree (§ 175.35).  Esta, in turn, pleaded guilty to offering a false instrument for filing in the first degree (*id.*), while the Corporation pleaded guilty to grand larceny in the second degree (§ 155.40 [1]), which resulted from the Corporation's receipt of $257,946.93 of state and federal funds to which it was not entitled.  In its plea agreement, the Corporation, inter alia, agreed to make restitution to the Medicaid program in the amount of $114,647.21, and to the Medicare program in the amount of $143,299.72.  The respective plea agreements preserved defendants' right to raise the issues of preemption and compliance with Executive Law § 63 (3) on their appeal from the judgments convicting them upon their guilty pleas, and we are called upon to address those issues herein.

II

We now turn to the merits, and address first the issue whether the Attorney General had authority to investigate and prosecute defendants under Executive Law § 63 (3).  It is beyond argument that the Attorney General "has no . . . general authority [to conduct prosecutions] and is without any prosecutorial power except when specifically authorized by statute" (*People v Gilmour*, 98 NY2d 126, 131 [internal quotation marks omitted]; *see People v Cuttita*, 7 NY3d 500, 507).  Authority to investigate and prosecute is afforded to the Attorney General by, inter alia, Executive Law § 63 (3), which provides as follows:

> "Upon request of the governor, comptroller, secretary of state, commissioner of transportation, superintendent of financial services, commissioner of taxation and finance, commissioner of motor vehicles, or the state inspector general, or the head of any other department, authority, division or agency of the state, [the Attorney General shall] investigate the alleged commission of any indictable offense or offenses in violation of the law which the officer making the request is especially required to execute or in relation to any matters connected with such department, and to prosecute the person or persons believed to have committed the same and any crime or offense arising out of such investigation or prosecution or both, including

but not limited to appearing before and presenting all such matters to a grand jury" (*cf.* General Business Law §§ 358, 692; Executive Law § 70-a).

Unauthorized prosecutorial participation by the Attorney General requires the dismissal of any indictment resulting therefrom (*see Gilmour*, 98 NY2d at 135), and here defendants seek that relief. In doing so, defendants do not dispute that the COH is "especially required to execute" Medicaid provisions contained in the laws of this state (Executive Law § 63 [3]), and instead contend that section 63 (3) prevents the Attorney General from prosecuting Medicare-related offenses that are discovered during an investigation into potential Medicaid fraud.

We are thus presented with a question of statutory interpretation, and in such instances

" '[i]t is fundamental that a court, in interpreting a statute, should attempt to effectuate the intent of the Legislature. The starting point is always to look to the language itself and where the language of a statute is clear and unambiguous, courts must give effect to its plain meaning' " (*Pultz v Economakis*, 10 NY3d 542, 547, quoting *State of New York v Patricia II.*, 6 NY3d 160, 162 [internal quotation marks, brackets and citations omitted]; *see Lynch v Waters*, 82 AD3d 1719, 1721).

Applying those rules, we agree with the People that the Attorney General's investigation and prosecution of defendants was authorized by the COH referral. Inasmuch as the DOH administers this state's Medicaid program (*see* Social Services Law § 363-a), there can be no dispute that the COH referral permitted the Attorney General to investigate Medicaid fraud. Moreover, what here was the Attorney General's concomitant investigation of Medicaid *and* Medicare fraud with respect to defendants was permitted by way of the broad ambit of the "arising out of" language in Executive Law § 63 (3), i.e., the clause of that statute allowing the "prosecut[ion] [of] the person or persons believed to have committed the same and *any* crime or offense *arising out of such investigation or prosecution*" (emphasis added).

Indeed, "courts . . . have uniformly construed [Executive Law § 63 (3)] as bestowing upon the Attorney [] General the broadest of powers" (*Matter of Mann Judd Landau v Hynes*, 49 NY2d 128, 135), and the phrase " 'arising out of', in its most common sense, has been defined as originating from, incident to or having connection with" (*People v Young*, 220 AD2d 872, 874, *lv denied* 87 NY2d 909). The location of that phrase in section 63 (3) makes it obvious that the Attorney General may prosecute any crime (here, Medicare fraud) connected to an authorized investigation (here, Medicaid fraud) (*see generally People v Zarro*, 66 AD3d 1050, 1051-1052, *lv denied* 14 NY3d 894, *reconsideration denied* 15 NY3d 811; *Young*, 220 AD2d at 874). Although this prosecution involved a joint effort between federal and

state authorities, nothing in section 63 (3) prohibits such collaboration, and defendants' further contention that this case had no relation to Medicaid fraud is forfeited by their pleas (*see People v Plunkett*, 19 NY3d 400, 405 ["appellate claims challenging what is competently and independently established by a plea (are) forfeited"]).

III

We next address the issue whether Executive Law § 63 (3) is preempted by 42 USC § 1396b (q) (3). Initially, to the extent that defendants rely on the theory of "express" preemption, i.e., that Congress explicitly mandated preemption of state law through 42 USC § 1396b (q) (3), we conclude that such a theory is not preserved for our review inasmuch as it was not raised by defendants before the motion court. Nevertheless, under the circumstances of this case we exercise our power to review that part of defendants' contention with respect to "express" preemption as a matter of discretion in the interest of justice (*see* CPL 470.15 [6] [a]), particularly because the issue of express preemption was raised by the People in opposition to defendants' second motion and thus was before the court in any event.

Under the Supremacy Clause of the United States Constitution (*see* US Const, art VI, cl 2), state law may be preempted "either by express provision, by implication, or by a conflict between federal and state law" (*New York State Conference of Blue Cross & Blue Shield Plans v Travelers Ins. Co.*, 514 US 645, 654). "[D]espite the variety of these opportunities for federal preeminence, [however, courts] have never assumed lightly that Congress has derogated state regulation, but instead have addressed claims of [preemption] with the starting presumption that Congress does not intend to supplant state law" (*id.*).

Thus, "[i]n preemption analysis, courts should assume that 'the historic police powers of the States' are not superseded 'unless that was the clear and manifest purpose of Congress' " (*Arizona v United States*, ___ US ___, ___, 132 S Ct 2492, 2501). "Congressional purpose is the 'ultimate touchstone' in determining whether federal law preempts a particular state action" (*Smith v Dunham-Bush, Inc.*, 959 F2d 6, 8, quoting *Allis-Chalmers Corp. v Lueck*, 471 US 202, 208) and, in searching for legislative intent to preempt, we must "examine the statute's express objectives, its structure, the plain meaning of its language, and its interpretation by the courts" (*id.*, citing *FMC Corp. v Holliday*, 498 US 52). When the text of a federal statute "is susceptible of more than one plausible reading, courts ordinarily 'accept the reading that disfavors [preemption]' " (*Altria Group, Inc. v Good*, 555 US 70, 77, quoting *Bates v Dow Agrosciences LLC*, 544 US 431, 449).

A.

Turning first to the issue of express preemption, we note that such preemption occurs when Congress has explicitly mandated preemption in the statute's language (*see Shaw v Delta Air Lines*,

*Inc.*, 463 US 85, 95; *see also Brown v Hotel & Rest. Empls. & Bartenders Intl. Union Local 54*, 468 US 491, 500-501), and we conclude that there is no " 'clear and manifest' " purpose on the face of 42 USC § 1396b (q) (3) to preempt state law (*Arizona*, ___ US at ___, 132 S Ct at 2501).  That statute provides in relevant part that the phrase "State medicaid fraud control unit" means

> "a single identifiable entity of the State government . . . [whose] function is conducting a statewide program for the investigation and prosecution of violations of all applicable State laws regarding any and all aspects of fraud in connection with (A) any aspect of the provision of medical assistance and the activities of providers of such assistance under the State [Medicaid] plan under this subchapter; and (B) upon the approval of the Inspector General of the relevant Federal agency, any aspect of the provision of health care services and activities of providers of such services under any Federal health care program . . . , if the suspected fraud or violation of law in such case or investigation is primarily related to the State [Medicaid] plan under this subchapter."

Defendants contend that express preemption exists here because the last clause in 42 USC § 1396b (q) (3) expressly prohibits prosecution in cases such as this, where the suspected fraud is not "primarily related to" Medicaid.  Without addressing the question whether the suspect fraud primarily relates to Medicaid,[3] we reject that contention.  Essentially, defendants posit that, in defining an MFCU, Congress precluded such an entity from investigating Medicare fraud unless such investigation was primarily related to state Medicaid fraud.  A mere negative *implication* in that language cannot be deemed an explicit mandate with respect to the alleged preemption of section 63 (3) (*see Shaw*, 463 US at 95).  In other words, in the absence of a clear reflection of a preemptive purpose (*cf. Egelhoff v Egelhoff ex rel. Breiner*, 532 US 141, 146-150), defendants' contention with respect to express preemption fails.  Defendants refer us to the legislative history of 42 USC § 1396b (q) (3), including various excerpts from the Congressional Record, in further support of their contention with respect to express preemption, but such history is not germane to this preemption analysis (*see Cipollone v Liggett Group, Inc.*, 505 US 504, 516; *Smith*, 959 F2d at 8 [preemption analysis turns on "the statute's express objectives, its structure, the plain meaning of its language, and its interpretation by the courts"]).  In any event, that legislative history is unhelpful to defendants.

---

[3]     We reiterate here the point that 25 of the 31 counts in the indictment involve Medicaid fraud.

B.

Turning next to the issue of conflict preemption, we note that such preemption "occurs 'when compliance with both state and federal law is impossible, or when the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objective of Congress" ' " (*United States v Locke*, 529 US 89, 109, quoting *California v ARC Am. Corp.*, 490 US 93, 100-101).  We first address what we refer to as the "impossibility" form of conflict preemption, which occurs when compliance with both state and federal law is impossible.  Here, compliance with both the state law (Executive Law § 63 [3]) and federal law (42 USC § 1396b [q] [3]) at issue is possible, and thus the impossibility form of conflict preemption does not apply to this case.

As noted, Executive Law § 63 (3) provides that,

> "[u]pon request of the . . . head of any . . . department, authority, division or agency of the state, [the Attorney General shall] investigate the alleged commission of any indictable offense or offenses in violation of the law which the officer making the request is especially required to execute or in relation to any matters connected with such department, *and . . . prosecute the person or persons believed to have committed the same and any crime or offense arising out of such investigation or prosecution or both*" (emphasis added).

Put simply, that statute allows the Attorney General to prosecute crimes arising out of the investigation of Medicaid fraud, which is precisely what occurred here.

In the course of its investigation, the Attorney General also complied with 42 USC § 1396b (q) (3).  As noted, that statute provides that the purpose of an MFCU is to

> "conduct[ ] a statewide program for the investigation and prosecution of violations of all applicable State laws regarding any and all aspects of fraud in connection with (A) any aspect of the provision of medical assistance and the activities of providers of such assistance under the State [Medicaid] plan under this subchapter; and (B) upon the approval of the Inspector General of the relevant Federal agency, any aspect of the provision of health care services and activities of providers of such services under any Federal health care program . . . , if the suspected fraud or violation of law in such case or investigation is primarily related to the State [Medicaid] plan under this subchapter."

Here, the Attorney General's office acted as an MFCU in investigating the subject Medicaid fraud, thus complying with part (A) of section 1396b (q) (3).  With respect to part (B) of that section, the record establishes that the Attorney General continued in its role as an MFCU as it investigated Medicare fraud related to the subject Medicaid fraud with the permission of the OIG.  We conclude that the referral from the COH, which requested that the Attorney General investigate Medicaid fraud, reflects that the "suspected fraud" considered by section 1396b (q) (3) (B) was fraud committed against New York State, and as such the "piggybacking" of the Medicare investigation onto the Attorney General's Medicaid investigation complied with section 1396b (q) (3).  Hence, as noted, the "impossibility" form of conflict preemption does not apply here.

We next address what we refer to as the "impediment" form of conflict preemption, which occurs when the state law impedes accomplishment and execution of the full purposes and objective of Congress.  That form of conflict preemption is also inapplicable here.

The federal statutory scheme at issue requires that states supervise their Medicaid programs by creating entities to prosecute fraud (*see* 42 USC § 1396a [a] [61]).  Section 1396b (a) (6) (B) relieves part of a state's financial burden in that respect by providing for federal reimbursement of a portion of costs incurred by states in complying with the requirement that states prosecute Medicaid fraud, and section 1396b (q) (3) simply describes the function of a state entity that investigates and prosecutes Medicaid fraud and Medicare fraud in connection with Medicaid fraud.  Executive Law § 63 (3) considers the prosecutorial authority of the Attorney General, and thus is unrelated to the federal statute at issue.  Indeed, we note that section 63 (3) appears to support the objectives of the subject federal statute, and thus the impediment form of conflict preemption has no application to this case.

IV

Accordingly, we conclude that each of the judgments on appeal should be affirmed.

Entered:  April 26, 2013                    Frances E. Cafarell
                                            Clerk of the Court